THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTON ELIAS, Plaintiff in Error.

*Opinion filed April 24, 1925.*

1. CRIMINAL LAW—*when indictment is sufficient under Prohibition act.* To charge a violation of the Prohibition act it is essential that the indictment negative the exceptions contained in the act; but this need not be done by the use of the exact words used by the legislature in stating the exceptions.

2. SAME—*determination of probable cause for search warrant is a judicial question.* Whether there is probable cause for issuing a search warrant is a judicial question, to be determined by the magistrate before whom complaint is made, and his decision must be based upon facts stated in the sworn complaint and not on the judgment of the party making the accusation, even though he be an officer of the law.

3. SAME—*what is probable cause for search warrant.* Probable cause for the issuance of a search warrant does not exist unless the magistrate is convinced, by competent and material evidence, that there is reasonable ground to suspect that the accused is guilty of the offense charged.

4. SAME—*affidavit for search warrant must state facts within affiant's knowledge.* The constitutional provision that no search warrant shall issue "without probable cause, supported by affidavit," does not permit an affidavit based on information and belief but the verified complaint must state the facts on which the complainant bases his belief that there is probable cause for the issuing of the warrant, and such statements must be of facts within the knowledge of affiant and be so definite that, if false, perjury may be assigned thereon.

5. SAME—*constitutional requirement as to a search warrant is same as warrant for arrest.* Section 6 of article 2 of the constitution provides the same protection whether the warrant be for the search of a house and the seizure of property or for the seizure or arrest of a person.

6. SAME—*complaint for search warrant must charge commission of offense—Prohibition act.* The complaint for the issuance of a search warrant must charge the commission of an offense, and such complaint and affidavit, under the Prohibition act, is not sufficient where it does not charge any person with a crime, but merely states that the affiant believes that intoxicating liquors are to be found in a building occupied, owned or controlled by the party complained of.

7. PROHIBITION—*affidavit for search warrant under Prohibition act cannot be based on information and belief.* Under section 6 of the bill of rights, a search warrant under section 29 of the Prohibition act cannot be issued upon information and belief of the party making the complaint, such information having been received from a party not under oath, and said section, to be valid, must be construed as authorizing a search warrant only upon affidavit of facts within the knowledge of the affiant.

8. SAME—*evidence seized under improper search warrant is incompetent.* Intoxicating liquors illegally seized under a search warrant issued upon information and belief, and not upon an affidavit of facts, are not admissible in evidence in a prosecution for violation of the Prohibition act where the question of their admissibility is properly presented.

9. SAME—*jury should not be permitted to take liquor to jury room.* Although it is stipulated that liquor found in the home of the defendant is intoxicating and fit for use as a beverage, it is error to permit the jury to take the liquor to the jury room.

FARMER, J., dissenting.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

KELLY, BURNS & DALY, (JAMES D. MURPHY, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, and OSCAR E. CARLSTROM, Attorneys General, C. W. REED, State's Attorney, GEORGE C. DIXON, and CHARLES F. MANSFIELD, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The construction of section 6 of article 2 of the constitution being involved, this writ of error is sued out of this court to review the judgment of the circuit court of DuPage county finding plaintiff in error guilty of possessing and selling intoxicating liquors contrary to the provisions of the Prohibition act and sentencing him to serve six months in the county jail and to pay a fine of $1000.

The eighth count of the indictment charges that Anton Elias did "unlawfully keep for sale intoxicating liquor while

the said county of DuPage was then and there prohibition territory, said keeping for sale of intoxicating liquor being then and there unlawful, prohibited and contrary to the provisions of the Illinois Prohibition act," and the ninth count is the same, except that it charges a sale instead of a keeping for sale. It is not unlawful, under all circumstances, to sell or keep for sale intoxicating liquors in this State. In order, therefore, to charge a violation of the Prohibition act it is essential that the indictment negative the exceptions contained in the act, (*People* v. *Barnes,* 314 Ill. 140; *People* v. *Martin,* id. 110;) though this need not be done by the use of the exact words used by the legislature in stating the exceptions. (*People* v. *Tate, ante,* p. 52.) Inasmuch as the indictment did not charge plaintiff in error with a crime, the motion in arrest of judgment should have been sustained.

Prior to the opening of the trial plaintiff in error filed in the circuit court a petition asking that certain intoxicating liquors in the hands of the sheriff be returned to him for the reason that they were illegally seized. This petition was denied on the ground that the intoxicating liquor was seized by virtue of a search warrant issued in accordance with the provisions of section 29 of the Prohibition act. This section provides that "whenever complaint is made in writing, verified by affidavit, to any judge, having cognizance of criminal offenses, that complainant has just and reasonable grounds to believe and does believe that intoxicating liquor is manufactured, possessed, kept for sale, used, disposed of, or transported in violation of any law of this State, * * * with the facts upon which such belief is based, the judge may issue a search warrant."

The complaint filed in this case before the county judge of DuPage county is in accordance with the form prescribed by the Prohibition act and reads as follows: "The Complaint and Affidavit of C. W. Reed, of Naperville, made before S. L. Rathje, County Judge, in and for said county of

DuPage, on this, the 3rd day of June, A. D. 1924, who, being first duly sworn, upon his oath says: that he has just and reasonable grounds to believe and does believe that intoxicating liquor is now unlawfully manufactured, kept for sale, possessed, used, disposed of, transported, or any mash, still or other property designed for the illegal manufacture of intoxicating liquor is possessed, within prohibition territory, to-wit: at and within a certain frame building situated on Lots 1 and 2 in Block 1 in Arthur T. McIntosh's First Addition to Westmont, in the Village of Westmont, DuPage county, Illinois, said premises being on the south side of Chicago Avenue and East of Wilmette Avenue in the Village of Westmont, DuPage County, Illinois and used as a residence, soft drink parlor and restaurant and known as 'Tony's Place,' also such outbuildings as are situated on said Lots 1 and 2 aforesaid, occupied, owned or controlled by Anton Elias, in the Village of Westmont, in the County and State aforesaid; and the following are the reasons for such belief, to-wit: information received from one Ray Bullerman, a reliable person, that he, Bullerman, on the 31st day of May, 1924, and on divers other days, bought intoxicating liquor, saw it kept for sale and sold by Anton Elias in said premises."

A frequent recurrence to fundamental principles is essential to the preservation of good government and to the security of the liberty and personal rights of the citizen. (*Sullivan* v. *City of Oneida,* 61 Ill. 242.) The natural right of a free man to be secure from unlawful search and seizure of his person or property was recognized in Magna Carta more than 700 years ago and has always been regarded by the American people as the very essence of constitutional liberty. The preservation of the right was guaranteed by the Federal constitution when this nation was established, and this guaranty has been repeated in every State constitution. Surely at this late day it is not neces-

sary to emphasize the importance to the welfare of our country of the due observance of the natural rights of our citizens guaranteed under the Federal and State constitutions. The writing into the constitution of this State of the provision guaranteeing that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized," was not an idle ceremony. With a clearness of vision which has attracted the attention and commanded the respect of the civilized world our forefathers provided an orderly manner for search and seizure and prohibited all others. Realizing that the due administration of the criminal laws demanded such authority, they provided for a lawful search and seizure when the complaint asking for the warrant was supported by an affidavit and described the place to be searched and the person or thing to be seized, but in the same provision they secured the individual in his person, his home and his property from invasion through unbridled legislation and unrestrained executive will by prohibiting unreasonable search and seizure. The despotic English kings justified their general warrants of search and seizure on the ground that it was necessary in order to enforce the law, and, strange as it may seem, there is a misguided minority in this country that even at this late day argues that "the end justifies the means." The power to make searches and seizures is absolutely necessary to the public welfare. Without it many criminal practices would go unchecked and many criminals unwhipped. But the process may be exercised and the law enforced without transgressing those constitutional guaranties which are provided for the protection of the honest, law-abiding citizen. The enforcement of no statute is of sufficient importance to justify indifference to the basic principles of government.

Whether there is probable cause for issuing a search warrant is a judicial question, to be determined by the magistrate before whom complaint is made. The testimony on which the magistrate acts must be reduced to writing, incorporated in a formal complaint and verified by affidavit. (*People* v. *Prall,* 314 Ill. 518; *Salter* v. *State,* 2 Okla. Cr. 464, 102 Pac. 719.) Probable cause does not exist unless the magistrate is convinced by competent and material evidence that there is reasonable ground to suspect that the accused is guilty of the offense charged. (*State* v. *District Court,* (Mont.) 224 Pac. 866.) The magistrate must exercise his own judgment and not act on the judgment of the official accuser. A warrant issued upon a conclusion of the accuser, without any facts stated in the application upon which the judicial officer to whom it is addressed may form his own conclusion, does not show "probable cause supported by affidavit," within the meaning of the guaranty. (*State* v. *District Court,* (Mont.) 198 Pac. 362.) "If the magistrate is to issue a search warrant without being apprised of the reasons leading the sheriff to think a search should be made, and without weighing these reasons, then the propriety of a search is always in the discretion of the police officer, and there is no judicial discretion involved. Why require a warrant? Why not let the officer make it on his own responsibility, if his bare opinion as to the necessity for a search justifies process authorizing it?" *Cravens* v. *State,* (Tenn.) 256 S. W. 431.

The verified complaint must state the facts on which the complainant bases his belief that the articles sought to be seized are concealed by the accused, with sufficient definiteness so that if it is false perjury may be assigned on the affidavit. (*People* v. *Prall, supra; Lippman* v. *People,* 175 Ill. 101; *Myers* v. *People,* 67 id. 503; *Gore* v. *State,* (Okla.) 218 Pac. 545; *State* v. *Peterson,* (Wyo.) 194 Pac. 342.) Chief Justice Marshall, in *Ex parte Burford,* 3 Cranch, 448, 2 L. ed. 495, held void an affidavit made as

a foundation for a warrant by a person who did not have personal knowledge of the facts, saying: "If the charge against him was malicious or grounded on perjury, whom could he sue for the malicious prosecution? Or whom could he indict for perjury?" In *Rice* v. *Ames*, 180 U. S. 371, 21 Sup. Ct. 406, it is held that a complaint upon information and belief is bad, and that a warrant should not be issued until the judicial officer to whom application is made shall have presented before him sufficient competent and material evidence to justify his reaching the conclusion that there is a probability of the guilt of the accused. In *Veeder* v. *United States*, 252 Fed. 414, the circuit court of appeals, speaking through the late Justice Baker, says concerning a search warrant issued on information and belief: "No search warrant shall be issued unless the judge has first been furnished with facts under oath, not suspicion, beliefs or surmises, but facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion or guesswork. If the facts afford the legal basis for the search warrant the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law."

The language of section 6 of article 2 of our constitution provides exactly the same protection whether the warrant be for the search of a house and the seizure of property or for the search or seizure of a person. This court has held repeatedly that a complaint or information charging an offense on information and belief does not authorize the issuance of a warrant for the arrest of a person, (*Peo-*

*ple* v. *Shockley,* 311 Ill. 255; *People* v. *Clark,* 280 id. 160;
*Parris* v. *People,* 76 id. 274;) nor the issuance of a war-
rant for the seizure of property. (*Lippman* v. *People, su-
pra.*) The affidavit must show on its face that the facts
stated therein are within the knowledge of the affiant,
(*People* v. *Shields,* 309 Ill. 142,) or the affidavit must be
in positive terms notwithstanding the knowledge of the
facts stated in the affidavit may have come to the affiant
from a confession of the accused or from some other source
which enables the affiant to state positively that the allega-
tions of the affidavit are true. (*People* v. *Kennedy,* 303 Ill.
423.) In *Lippman* v. *People, supra,* this court said: "It
has been uniformly held, wherever the question has arisen
under a statute or constitution containing such provision,
that the oath or affirmation must show probable cause aris-
ing from facts within the knowledge of affiant and must
exhibit the facts upon which the belief is based, and that
his mere belief is not sufficient. (*United States* v. *Tureaud,*
20 Fed. 621; *Johnson* v. *United States,* 87 id. 187.) The
constitutional provisions on this subject had their origin in
the abuse of executive authority and their design is to sub-
stitute judicial discretion for arbitrary power so that the
security of the citizen in his property shall not be at the
mercy of individuals or officers. The general statute author-
izing search warrants contained in the Criminal Code fully
recognizes this rule by the requirement that the judge or
justice of the peace shall be satisfied that there is reasonable
cause for the belief of the affiant before he shall issue his
warrant. Wherever a statute requires probable cause sup-
ported by oath or affirmation, the complaint must set up
facts and cannot rest on mere belief, which will not satisfy
the requirement. (*Blythe* v. *Tompkins,* 2 Abb. Pr. 468;
*People* v. *Heffron,* 53 Mich. 527, 19 N. W. 170; *Ex parte
Dimmig,* 74 Cal. 164, 15 Pac. 619.) A search warrant can
only be granted after a showing made before a magistrate
under oath that a crime has been committed, and the law,

in requiring a showing of probable cause, supported by affidavit, intends that facts shall be stated which shall satisfy the magistrate that suspicion is well-founded. The mere expression of opinion, under oath, is no ground for the warrant, except as the facts justify it." This decision has been cited throughout the United States as a leading case on the construction of constitutional provisions similar to the one now under consideration. If the accuser were on the witness stand he would not be permitted to testify to mere hearsay, and he certainly should be equally restricted in an *ex parte* affidavit where he is subjected to no cross-examination. (*State* v. *McGahey,* 12 N. D. 535, 97 N. W. 865.) In *United States* v. *Giles,* 284 Fed. 208, the circuit court of appeals holds that "it should have affirmatively appeared that he [affiant] had personal knowledge of facts competent for a jury to consider, and the facts, and not his conclusion from the facts, should have been before the commissioner," who issued the search warrant. Lord Coke, in the Institutes, (Bk. 4, p. 177,) referring to search warrants, says: "For justices of peace to make warrants upon surmises for breaking the houses of any subjects, to search for felons or stolen goods, is against Magna Carta." Judge Cooley, in his work on Constitutional Limitations, page 429, says: "And the law in requiring a showing of reasonable cause for suspicion intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well-founded; for the suspicion itself is no ground for the warrant except as the facts justify it."

A charge is not "supported by affidavit" unless it is supported by documentary evidence or testimony under oath competent to establish the charge in a court. "Charges are not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law. The most improbable stories may be believed of anyone and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any

man  *  *  *  who will swear that he has been informed
and believes in his guilt.  It is easy to tell falsehoods, and
those who are least fitted to judge of their credibility are
generally the very persons who will believe them because
they are told.  But to substantiate charges within the mean-
ing of the law evidence is required, and not mere suspicion
or information or beliefs." (*Swart* v. *Kimball,* 43 Mich.
443, 5 N. W. 635.)  "If no warrant shall issue but upon
probable cause supported by oath or affirmation, the sup-
port must be something more than hearsay or belief.  Where
a person or officer states upon oath 'that the several allega-
tions and facts set forth in the foregoing information are
true, as he has been informed and verily believes,' he may
have no knowledge of or information upon the subject ex-
cept mere hearsay and yet can conscientiously make such
declaration.  A complaint thus verified proves nothing.  It
does not state facts, but only the affiant's hearsay knowledge
and belief.  It is not a complaint and information or dec-
laration supported by an oath or affirmation.  At common
law an information might be filed under the English prac-
tice against persons charged with misdemeanors, yet no rule
was granted in regard to such cases except upon evidence
as would uncontradicted make out the offense beyond a
doubt.  *  *  *  If a warrant in the first instance may is-
sue upon a mere hearsay or belief, then all the guards of
the common law and of the bill of rights of our own con-
stitution to protect the liberty and property of the citizen
against arbitrary power are swept away.  There is no neces-
sity of going so far and the constitution warrants no such
conclusion.  The expressions of the bill of rights are very
plain and very comprehensive and cannot be misunderstood.
The oath or affirmation of a complaint or information upon
which a defendant is arrested in the first instance must set
forth that the allegations and facts therein contained are
true." *State* v. *Gleason,* 32 Kan. 245, 4 Pac. 363.

The complaint filed in this case does not charge that Anton Elias, or any other person, has committed a crime. (*Housh* v. *People,* 75 Ill. 487.) It merely states that the affiant believes that intoxicating liquors are to be found in a building occupied, owned or controlled by Elias. The fact that Elias owned the building and that intoxicating liquor was kept in it would not subject him to the penalties of the law unless the liquors were kept there with his knowledge for some prohibited purpose. Notwithstanding the failure of the complaint to charge any person with a crime, a general warrant was issued on the filing of the complaint, directing the sheriff to arrest any and all persons found in the premises in the event intoxicating liquor was found there. It was such general warrants issued by the officers of the Crown in England that caused the American people to demand that the Federal constitution specifically prohibit the issuance of a warrant except "upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

The State's attorney in the instant case did not state in the complaint filed by him any fact as a basis for his belief that intoxicating liquors were then unlawfully kept in a building described that subjected him to the penalties of perjury in the event his information was false. Grant that Ray Bullerman did inform him that he bought intoxicating liquor from Anton Elias in the premises described. If this information was false no person could be prosecuted for perjury. Bullerman did not give the information under oath and he was therefore subject to no penalty if the information given by him was false. The State's attorney cannot be prosecuted for what he believes, no matter how insufficient or false the basis of his belief. From this analysis it seems clear that Elias was subjected to a search and seizure in direct violation of the constitution. If the State's attorney or other officer cannot make a verification

of facts then the complaint should be supported by the affidavit of someone who can. If the officer can get information that convinces him that a crime has been committed he can obtain the affidavit required by the constitution. If he cannot obtain the sworn testimony to secure the arrest of the accused and the seizure of the property of the accused, how can he get the sworn testimony to convict the accused after he is arrested? If Bullerman had the information the State's attorney says he had, then Bullerman could have made a proper affidavit to support a search warrant. The State's attorney's affidavit says he got his information from "Ray Bullerman, a reliable person," but this record shows that Bullerman was at the time in the county jail of DuPage county charged with the crime of burglary and larceny, and that his defense to that charge was that he was intoxicated when he broke and entered the building. Therefore it appears from this record that the so-called affidavit supporting the search warrant was based on hearsay, which in turn was based on the unsworn statement of a confessed felon.

There is no decision of this court that holds valid a complaint which does not state under oath that a crime has been committed. Defendant in error relies upon *Langdon* v. *People,* 133 Ill. 382. In that case the affidavit directly and unequivocally charged that the accused had committed the crime of forgery. It is only the latter part of the affidavit supporting the search warrant that is made on information and belief. The judgment of conviction there reviewed was properly affirmed, but in so far as the opinion approves the practice of issuing a search warrant on information and belief it is out of harmony with all other decisions of this court, and in order to avoid further confusion that part of the opinion is specifically disapproved. While the complaint in *People* v. *Shields, supra,* was informal, yet it showed on its face that the person who signed the complaint had personal knowledge of the facts stated therein,

and it was for that reason sufficient when collaterally attacked. In so far as section 29 of the Prohibition act authorizes the issuance of a search warrant upon the filing of a complaint verified by affidavit it is valid legislation but must not be construed to authorize the issuance of a search warrant upon information and belief, for if so enlarged it would contravene section 6 of the bill of rights of this State and attempt to grant an authority which is beyond the power of the legislature.

Under the law clearly established by the great weight of authority in the Federal and State courts and supported by reason and logic, the complaint and the warrant issued pursuant thereto were void, and it was error to permit the State to introduce in evidence the intoxicating liquors illegally seized. *People* v. *Castree,* 311 Ill. 392; *Gouled* v. *United States,* 255 U. S. 298, 41 Sup. Ct. 261.

With the evidence obtained by the unlawful search stricken from the record there is no evidence remaining which warrants a conviction under the eighth count of the indictment, which purported to charge a prohibited possession of intoxicating liquor. Nor is there evidence in the record justifying a conviction under the ninth count of the indictment, which purported to charge an illegal sale. The only testimony on this subject is that Mary Elias, the daughter of plaintiff in error, sold to Ray Bullerman a glass of liquid that looked and tasted like wine. Bullerman testified that he did not know what it was. He did not testify that it intoxicated him or that it contained any alcohol.

It was also error for the court to send to the jury room the vessels containing the intoxicating liquors seized at the home of plaintiff in error. It was stipulated that the contents of the six bottles and the jug were fit for use as a beverage and were intoxicating. The presence of the exhibits in the jury room would not assist the jury in reaching a correct conclusion on the issue presented unless they determined, by tasting and other experiments, whether the

liquor was intoxicating. If the jury had used the exhibits for this purpose they would have violated the constitutional provision guaranteeing "that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel" and "to meet the witnesses face to face." This provision means that all evidence in a criminal case must be produced in the presence of the accused. (*People v. Clark*, 301 Ill. 428.) To permit the jury to sample intoxicating liquor for the first time while they are considering their verdict is to permit them to receive evidence after the cause has been submitted to them for decision and amounts to a denial to the accused of the right to appear and defend against such evidence and to be represented by counsel. It is very important for the accused and his counsel to be able to perceive exactly what impression is being made upon the jury by any portion of the evidence given on his trial. It is probably unnecessary to say that it would be improper for the jury to determine the intoxicating effect of liquor by sampling it in the court room in the presence of the accused and under the supervision of the judge, but it would be all the more objectionable to permit the sampling to be done in the jury room after the case has been placed in the hands of the jury. We can think of no useful purpose to be served by permitting intoxicating liquors to be taken by the jury on their retirement, and it is apparent that the defendant's rights may be prejudiced by permitting it to be done.

The judgment of the circuit court is reversed.

*Judgment reversed.*

Mr. JUSTICE FARMER, dissenting:

I was not in accord with the decisions in *People v. Barnes*, 314 Ill. 140, and *People v. Martin*, 314 id. 110, as to the sufficiency of the indictment held bad in those cases, but what they decided must now be accepted as the law. I do not, however, agree with the opinion of the court as to

the sufficiency of the affidavit upon which the warrant was issued in this case. Upon that question the decisions of the courts, Federal and State, are not harmonious. Some of them hold the complaint must state only facts within the personal knowledge of the affiant, and some of them hold it is not essential that the complaint state only facts within the personal knowledge of the affiant but that it is a compliance with the constitutional requirements if the complaint states such facts and circumstances as will enable the officer issuing the writ to determine whether probable cause exists. In this case the complaint was sworn to by the State's attorney, and states he had been informed by Ray Bullerman, a reliable person, that he had bought intoxicating liquor on a date named, and on divers other days, from the defendant, Elias, and had seen liquor kept for sale and sold by him on the premises described in the complaint. If the complaint showed probable cause the warrant was not illegally issued. The county judge determined it did show probable cause and issued the warrant. The statement in the opinion of the court that the record shows Bullerman was in jail charged with burglary and larceny is wholly irrelevant. The affidavit of the State's attorney stated he was a reliable man, and upon the affidavit the county judge acted in issuing the warrant. The judge was not required to make an investigation whether Bullerman was reliable. The county judge and State's attorney were officers in the same county, and if the judge believed the State's attorney to be a truthful man he was justified in relying on his statement. If the State's attorney misrepresented or was mistaken in the character of Bullerman it in no way affected the determination of the judge that the complaint showed probable cause.

The constitutional prohibition is against unreasonable search and seizure. · If probable cause is shown by affidavit then the search is not unreasonable. What is probable cause is a judicial question, to be determined by the officer to

whom application is made for the writ. There is no requirement of the constitution that probable cause can only be shown by a complaint stating only facts within the personal knowledge of the affiant. To restrict the issuing of warrants by such a condition is not required by the constitution or the statute and would in a large measure nullify the use of search warrants in the administration of the criminal law.

Many decisions, both American and English, hold the question of probable cause does not depend on whether the crime has, in fact, been committed by the accused, but whether the affiant's belief is based upon reasonable grounds. The judge before whom the complaint is made determines whether probable cause exists for issuing the warrant. If the complaint shows reasonable grounds for suspecting a crime has been committed by the defendant it is sufficient. I quote from one case as typical of many: "It has been the practice, for years and years, for officers to swear out warrants based upon information and belief, and we are not prepared to hold that the oath or affirmation required by the constitution to be made to any complaint charging a person with felony, for the purpose of causing an arrest and examination to answer to a charge in another court, must be made upon the direct knowledge of the person taking the oath. A sheriff is seldom in possession of facts within his own positive knowledge. Again, those who are in possession and knowledge of the exact facts are often unwilling to become complainants themselves." *State* v. *McCaffery*, 16 Mont. 33, 40 Pac. 63.

The latest expression on the subject of search warrants by the Supreme Court of the United States is *Carroll* v. *United States,* decided March 2, 1925. In that case it was held that under the Federal Prohibition act it is lawful for Federal prohibition enforcement officers, without a warrant, to stop an automobile on the public highway, search it, and, if intoxicating liquors are found in it, seize the liquors and

arrest the parties in charge of the automobile. The court gives the history of the passage of the amendment to the act which it held authorized the search and seizure of an automobile on the public highway without a warrant. The amendment as originally proposed prohibited the search of "the property or premises of any person without previously securing a warrant," and provided a penalty for violation of the statute. The judiciary committee of the house objected to the amendment as proposed and filed a written report, in which it was stated there were on the statute books of the United States a number of acts authorizing search without a warrant; that "under the common law and agreeable to the constitution, search may in many cases be legally made without a warrant. The constitution does not forbid search as some parties contend, but it does forbid unreasonable search." As finally adopted the statute forbade search of a private dwelling without a warrant, or other building or property, where the search was made maliciously and without probable cause. The court said the amendment left the way open for searching an automobile or vehicle of transportation without a warrant if the search was not malicious or made without probable cause. The facts were, as stated by the court: In September, some two months before the automobile was stopped upon the highway and searched, the parties who were driving it had visited the apartment of the prohibition officers in Grand Rapids, Michigan, and the officers informed them they wished to buy three cases of whisky. Carroll and Kiro, the defendants, told the officers they would get it for them in a half to three-quarters of an hour and drove away in their car. Later they returned and informed the officers the man who had the liquor was out and they would deliver it the next day. They did not again return at any time and no explanation was ever made of their failure to do so. Some time in October the officers saw Carroll and Kiro driving east from Grand Rapids in the same car they had when

they visited the officers at their apartment. The officers followed in an attempt to overtake them but failed to do so. On the 15th of December, Carroll and Kiro, in the same automobile, met and passed the officers on the highway between Detroit and Grand Rapids. The officers pursued them, overtook, stopped and searched the car and found hidden in it sixty-eight bottles of intoxicating liquor. The officers seized the liquor and arrested Carroll and Kiro. The court said the search, seizure and arrest depended on whether the officers had reasonable cause to believe intoxicating liquors were being transported in the automobile for an unlawful purpose. The court quoted from *Stacey* v. *Emery*, 97 U. S. 642: "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient," and cited other Federal decisions. The court also quoted *McCarthy* v. *DeArmit*, 99 Pa. St. 63, defining what constitutes probable cause: "The substance of all the definitions is a reasonable ground for belief in guilt." The court then said: "The facts and circumstances within the knowledge of the officers were sufficient to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched." The defendants contended in that case that it was error to admit in evidence, on the trial, liquor seized in the car. A motion was made by defendants that the liquor be returned to them on the ground that it had been unlawfully seized. The court said that contention was without merit and no right of the defendants was infringed. In the instant case the officers did have a search warrant, and the showing of probable cause for its issue was much stronger than the facts appearing in the *Carroll case,* which the court held were sufficient to justify the search and seizure in that case without any warrant whatever.

I cannot agree that the warrant in this case was illegally issued.