## The People of the State of Illinois, Defendant in Error, v. Harry W. Foster, Plaintiff in Error.

### Gen. No. 8,204.

Opinion filed July 2, 1928.

G. G. Ginnaven, for plaintiff in error.

Hugh Green, State's Attorney, for defendant in error.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

In this case Harry W. Foster, the plaintiff in error, was convicted in the county court of Morgan county under the fourth count of an indictment charging him with a violation of the Prohibition Act, Cahill's St. ch. 43, namely, that he unlawfully had in his possession "certain intoxicating liquor, to-wit, certain beer containing more than one half of one percentum of alcohol by volume." The plaintiff in error was thereupon sentenced to pay a fine of $1,000.

The indictment and conviction is based upon a search and seizure carried on with reference to the commission of the offense in a dwelling house situated on what was known and described as the "Thompson farm," situated near Jacksonville, and owned by the plaintiff in error. In reference to the search and seizure it appears Grant Graff, the sheriff of Morgan county, who conducted the same, testified concerning it as follows: "I am the Sheriff of Morgan County. I was out to the farm on the 22nd and 23rd of March, 1927. I had a Search Warrant the second time I was there. We found a lot of sloppy stuff and I don't know what to call it. We took two cans out of the vats and sent them out to the Illinois College." On cross examination he further testified: "On March the 22nd, I and two officers went through the house and barns without a Search Warrant, then left an officer in charge, returned to Jacksonville and on March 23rd secured a

Search Warrant, then returned to the farm with the State's Attorney. * * * Harry W. Foster did not live on this farm, but lived about a ½ or ¾ miles away. There was no one found in possession of this sloppy stuff and no one was arrested under the Search Warrant.''

W. S. Leavensworth testified that he was professor of chemistry at the Illinois College, and that the samples of the sloppy stuff submitted to him for anaylsis contained alcohol. One sample contained 6 and 35-100ths per cent by volume, and the other 4 and 90-100ths per cent by volume. The only evidence adduced on the trial to connect the plaintiff in error with the alleged possession of the sloppy stuff described as beer mash was the testimony of Leonard Hill, deputy circuit clerk, which was to the effect that the record of a deed showed that plaintiff in error bought the farm in question on March 3, 1922.

William G. Pendall was also called as a witness, and testified: ''I live in Alexander, and have known the defendant for about 8 years, I live about ½ a mile from him. I live across the road from the Thompson farm. In November, 1926, I noticed a good deal of hauling. I did not pay much attention to it. I also saw the defendant with a team pulling out a truck that was stuck in the mud. On Feb. 2, 1927, after returning from the Waltman auction sale, I milked, then that night I heard defendant's voice over by the farm. I did not see the defendant over on the Thompson farm between November and March 23rd. * * * On February 2nd, I was about an 8th of a mile away and heard talking down on the farm that sounded like the voice of the defendant.''

Mrs. N. M. Pendall also testified that she was the wife of William Pendall and had known the defendant about nine years; that in November, 1926, he borrowed a scraper to grade a road down by the Thompson farm; that about the middle of November she saw the defend-

ant help pull out a truck that was stuck in the mud, and that on February 2, 1927, at night after the Waltman sale she heard the defendant's voice down on the Thompson farm. This was all the evidence adduced that plaintiff in error was guilty, and the record contains no evidence that he had possession or control directly or indirectly of the beer mash which was seized under the search warrant by the sheriff. The only evidence adduced by the People which in any way connects the plaintiff in error with the vats containing beer mash on the premises in question is that at the time of the search and seizure he was the owner of the premises.

The plaintiff in error testified that he was the owner of the Thompson farm, but had never lived on it; that it had been occupied by tenants; that Allie Moore occupied it in 1924; that Tony Keifer occupied it in 1925; that Ed Robinson occupied it in 1926; and that Robinson vacated it about November 15th; that it was thereupon leased to Virgil McCawley in November, 1927, and that McCawley was in possession as the tenant after that time; that he had not been on the farm after November 15, 1926; and had no knowledge about any vats or any use made of the farm for the purpose of violation of the law.

Before the trial a motion was made to quash the search warrant, which was overruled. Afterwards the complaint and search warrant and the evidence procured by means of the search and seizure were admitted in evidence against the plaintiff in error on the trial. The search warrant in question was issued upon the complaint of the sheriff, and the basis of the complaint upon which it was issued set forth: "That said complainant has just and reasonable grounds to believe and does believe that intoxicating liquor is now unlawfully manufactured at and within certain premises consisting of a parcel of land, dwelling house and out buildings including sheds located on said real

estate in the west half of section 12 of township 15 North and Range 9 west of the 3rd Principal Meridian, said dwelling house being a two-story frame house located about one-fourth of a mile north of the public road leading from Jacksonville, Illinois, to Springfield, Illinois, and near the east line of said half section, said premises containing in all 28 and 94-100ths acres, being a part of the real estate of George W. Foster, late of said county of Morgan in the State of Illinois, and by him theretofore conveyed to Harry W. Foster, and now owned by said Harry W. Foster, in the county of Morgan,'' etc.

The search warrant issued in accordance with this complaint is as follows: ''We command you, in the name of the People of the State of Illinois, taking with you the necessary and proper assistance in the day time, to forthwith enter the said premises hereinbefore described, and make diligent and careful search for intoxicating liquor and any mash, still or other property hereinbefore described and seize and bring any and all intoxicating liquor there found, and all vessels containing the same, and all property, implements, furniture and vehicles kept or used for the purpose of violating or with which to violate, any law of this state, there found, and any and all persons, if any there be, in whose possession they are found, forthwith before me at my office in Jacksonville, Illinois, or before some other judge or justice of the peace having cognizance of the case, to be dealt with according to law.''

The complaint was clearly insufficient to justify the issuing of a search warrant. It does not state the facts which constitute the reasonable grounds of the belief of the complainant that intoxicating liquor was then unlawfully manufactured in the dwelling house to be searched, and does not charge the plaintiff in error with any offense in connection with the manufacture of such intoxicating liquor, nor with having illegal possession thereof. The search warrant is the same in

scope and character as the one condemned by this court in *Hirschfield v. People,* 241 Ill. App. 439, and by the Supreme Court in *People v. Elias,* 316 Ill. 376. The Supreme Court in commenting on the illegality of the search and seizure proceedings in the *Elias* case said:

"The complaint filed in this case does not charge that Anton Elias, or any other person, has committed a crime. It merely states that the affiant believes that intoxicating liquors are to be found in a building occupied, owned or controlled by Elias. *The fact that Elias owned the building and that intoxicating liquor was kept in it would not subject him to the penalties of the law unless the liquors were kept there with his knowledge for some prohibited purpose.* Notwithstanding the failure of the complaint to charge any person with a crime, a general warrant was issued on the filing of the complaint, directing the sheriff to arrest any and all persons found in the premises in the event intoxicating liquor was found there. It was such general warrants issued by the officers of the Crown in England that caused the American people to demand that the Federal Constitution specifically prohibit the issuance of a warrant except 'upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.' " And the court further said: "The verified complaint must state the facts on which the complainant bases his belief that the articles sought to be seized are concealed by the accused, with sufficient definiteness so that if it is false perjury may be assigned on the affidavit." *People v. Prall,* 314 Ill. 518.

It is evident from the foregoing authorities that the search and seizure proceedings in question were illegal, and the court should therefore have quashed the search warrant. And it was error to admit in evidence on the trial the articles procured by this unlawful search and seizure. *People v. Brocamp,* 307 Ill.

448. But the admission of this evidence was erroneous for another reason, namely, that there was no proof which tended to show that plaintiff in error was in the possession or control of the alleged intoxicating liquor or beer mash in question. "The burden rests upon the People to prove that the defendant committed the crime set forth in the indictment, by proof, beyond a reasonable doubt, of all the material and essential facts constituting the crime." *People v. Cramer*, 298 Ill. 509. The same requirement of law pointed out applies to charges made for violation of the Prohibition Act, Cahill's St. ch. 43, as well as any other violations of the law which are criminal in character.

For the reasons stated, the judgment of conviction is reversed.

*Judgment reversed.*