# BLUE RIGSBY v. STATE.

No. A-8549.   Sept. 8, 1933.
Rehearing Denied Sept. 15, 1933.
(24 Pac. [2d] 1016.)

A. M. deGraffenried and Kelly Brown, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Mayes county of the crime of murder, and his punishment fixed by the jury at imprisonment for life in the state penitentiary.

Defendant was charged by information jointly with Elizabeth Barcus and John Doe with having murdered one George W. Barcus, the husband of Elizabeth Barcus, on or about the 12th day of December, 1931.

It appears from the record that Barcus and his wife had been living in the city of Muskogee; that defendant also lived there and was engaged in the real estate business; that defendant had been going frequently to the Barcus home for several months before the homicide—sometimes when Barcus was not there.   All the circumstances of the case indicate that defendant and Mrs. Barcus had become intimate.

That on the 11th day of December, 1931, Mrs. Barcus went to the post office in Muskogee and withdrew their postal account in the sum of $800, which was the entire amount they had on deposit; that on the same day Barcus executed a deed to 17 acres of land and a bill of sale to the household goods and automobile to his wife, the making of which was procured by defendant, and paid over to defendant the entire $800 and took his receipt therefor; that on the 11th day of December, 1931, defendant spent

the night at the Barcus home; that some of the neighbors heard an argument in the house, loud talking, and evident anger on the part of Mrs. Barcus; that defendant and Barcus left the house together early on the morning of December 12th, the day of the homicide; that after leaving the house defendant made arrangements with a transfer company to move the Barcus household goods to Siloam Springs, Ark., and, meeting Mrs. Barcus at the transfer office, paid the transfer company for such moving; that in the afternoon defendant and Barcus went out to Barcus' home to see if the goods were all taken; that at about 7 o'clock in the evening defendant and Barcus were seen together; that defendant was the owner of a blue or green Buick town sedan, having a Muskogee sign and a horseshoe on the radiator, with a trunk and spare tire with a tail-light in the center on the back; that this make of car was particularly distinctive because of these marks and the fact that there were few of that kind of car in that particular neighborhood; that about 9 o'clock in the evening certain officers were going from Muskogee to Vinita and passed this car standing at the side of the road, near the town of Pryor; that one man was in the car and two outside, one man being about the size and description of defendant; that this car was also seen in the town of Pryor just prior to this time and being occupied by three men; that they stopped and got something to eat and drove out of town; that later in the evening the dead body of Barcus was found beside the road, some distance from Pryor; that there was a number of wounds on his head, made with a sharp instrument which had broken the skull and penetrated the brain; that upon investigation the officers found a place up the road about a quarter of a mile where the murder had apparently been committed; that a car having diamond tread casings had turned

around there; that the defendant's car had that kind of casings; that, when defendant was arrested the next day, he had in his possession $765.37, which he told the officers he had received from the sale of real estate; that after the preliminary defendant made bond and continued to visit Mrs. Barcus at her apartment and had possession of and drove the Barcus automobile; that defendant and Mrs. Barcus executed a joint receipt and received the $765.37 from the sheriff of Mayes county.

The defense was an alibi.

Defendant, testifying for himself, admitted he had received the $800 from Barcus and his wife; that he caused to be executed the deed and bill of sale and paid for the removal of Mrs. Barcus' goods to Siloam Springs, but denied all other things proven by the state.

Defendant contends this evidence is insufficient to support the verdict of the jury:

First, because, when the record is considered as a whole, the evidence fails to establish the guilt of defendant beyond a reasonable doubt.

With this we cannot agree. The state established a motive for the homicide by proof of the illicit relationship between defendant and Mrs. Barcus; that defendant was with deceased the last time he was seen alive; that his car was at the scene of the homicide, and that he was also there and seen in company with a man who answered the description of deceased; that defendant was in possession of all of deceased's cash and had procured deceased to dispose of all of his real and personal property to Mrs. Barcus, which, taken together with all the other facts and circumstances in the case, conclusively points to the guilt of defendant.

Under this assignment it is further contended the evidence is insufficient because the witness Firestone, who testified for the state, made an affidavit in support of the motion for a new trial repudiating and contradicting his testimony given at the trial, wherein he identified defendant and his car as being in Pryor on the night of the homicide, at about 9 o'clock, and in which affidavit he swore that the car he saw was not defendant's car, and that he was mistaken in saying defendant was one of the men seen at the car at that time.

The only possible effect of this action on the part of Firestone would have been to make him an unavailable witness for the state. Defendant could not have used any such negative testimony in his own behalf. Firestone's affidavit in support of the motion for a new trial was only contradictory of himself when he testified under oath at the trial of the case.

An examination of the record discloses other witnesses besides Firestone testified to substantially the same state of facts that he did at the trial. It is apparent, therefore, that no different result would have ensued had the state never called Firestone as a witness.

It has been held that the making of such an affidavit does not require the granting of a new trial. Carmichael v. State, 111 Ga. 653, 36 S. E. 872; Collins v. State, 124 Ga. 788, 53 S. E. 193; People v. Cameron, 180 N. Y. 557, 73 N. E. 1129; Shackelford v. State (Tex. Cr. App.) 53 S. W. 884; Ryal v. State, 16 Okla. Cr. 266, 182 Pac. 253; Yoder v. State, 18 Okla. Cr. 637, 197 Pac. 848; Martin v. State, 34 Okla. Cr. 274, 246 Pac. 647, 648.

This court in numerous cases has said: Where a conviction rests upon circumstantial evidence, and circumstances are proven from which the reasonable and logical

inference of guilt clearly arises, and which excludes any reasonable hypothesis except the guilt of the accused, although the evidence is conflicting, this court will not disturb the verdict for insufficiency of the evidence.

It is next contended the court erred in overruling the amended motion for a new trial on the ground of newly discovered evidence.

In this contention it is contended the affidavit of Firestone constituted newly discovered evidence.

Counsel cite no authorities, and we have been unable to find, where any court has ever held such an affidavit to be newly discovered evidence. As was said in Martin v. State, supra:

"It would be a dangerous rule to allow, generally, a conviction to be overturned by the ex parte affidavit of a witness that he committed perjury in the trial of the case. * * * If the filing of such an affidavit were generally recognized as a sufficient ground for a new trial as newly discovered evidence, we should see convicted criminals pursuing witnesses who had testified against them endeavoring to procure affidavits impeaching their own testimony."

It is further contended under this assignment the court erred in overruling the motion for a new trial on the ground of newly discovered evidence which was supported by the affidavit of John Roy and Albert Roy.

Their testimony, if believed by the jury, would merely show they saw deceased on the streets of Muskogee, about 7:30 p. m. December 12th, on which date he was later murdered about a mile north of Pryor, about 10:30. This testimony, if believed by the jury, would have tended to corroborate the state's evidence, because it was about that hour the state proved deceased to be in the company of

defendant. It is apparent that such testimony would not likely change the result, since there was ample time for defendant and deceased to reach the place of the homicide after 7:30.

It is next contended the trial court erred to the prejudice of defendant in not having him present at the time of the hearing on the motion for a new trial on the ground of newly discovered evidence.

The appellate courts of Oklahoma have repeatedly held the presence of defendant is not required on the hearing of a motion for a new trial. Ward v. Terr., 8 Okla. 12, 56 Pac. 704; Arnold v. State, 48 Okla. Cr. 452, 132 Pac. 1123; Henry v. State, 10 Okla. Cr. 369, 136 Pac. 982, 52 L. R. A. (N. S.) 113.

The authorities above cited are conclusive on this question. It is not necessary for a defendant to be present in court at the trial, except from the beginning of the impaneling of the jury until the verdict is recorded and the jury finally discharged. Motions for change of venue, for a new trial, in arrest of judgment, and proceedings of that character, not being a part of the trial proper, the presence of defendant is not required.

The evidence being sufficient to support the verdict of the jury and no substantial error appearing in the record, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.