Roy Lee BOOZE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13201.

Court of Criminal Appeals of Oklahoma.

March 11, 1964.

Claude Hendon, Shawnee, Carroll Samara, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Joe Young, Jr., County Atty., Lincoln County, Chandler, for defendant in error.

## PER CURIAM.

This is an appeal by Roy Lee Booze, appellant, defendant below, from a conviction, judgment and sentence on a charge of second degree burglary. The defendant was charged by information in the district court of Lincoln County, Oklahoma, with having burglarized the Morgan & Hayes store in Wellston, in the aforesaid county and state, after a former conviction had in McCurtain County, Oklahoma on a charge of second degree burglary, for which he was sentenced to seven years imprisonment. The defendant was tried to a jury on the charge herein, convicted, and his sentence fixed at ten years in the penitentiary. Judgment and sentence was entered in keeping with the verdict of the jury, motion for new trial duly filed and overruled, and appeal to this court was duly perfected.

The defendant has raise three contentions which will be stated and disposed of in order of their presentation.

The defendant first contends that the trial court committed reversible error in overruling the defendant's motion to suppress the State's evidence, obtained under what he contends was an illegal and unauthorized arrest, search and seizure of defendant's person and effects, incident to the said arrest and without the aid of a search warrant or legal process, and being without probable cause to believe that a felony had been committed.

This contention requires a brief review of the facts and circumstances upon which the trial court predicated the order overruling the motion to suppress.

The evidence in support of the arrest, search and seizure is substantially as follows: Between four and four-twenty o'clock in the morning on October 14, 1960 the Wellston night watchman observed a

man crouched before the safe which was located in the front end of the Morgan & Hayes store. The watchman drove his car around to the back of the store and stopped. Getting out, he observed the back door of the store was standing open, and he went into the store about a distance of ten feet, when he heard the crash of glass, which proved to be one of the front plate-glass windows. The watchman immediately went back to his car and proceeded around to the front of the store on the main street, where he observed two men in a Buick automobile speeding out of town in an easterly direction. He gave chase, but being completely outdistanced, he returned to Wellston and called the Sheriff of Lincoln County to whom he reported the incident. The sheriff arrived in Wellston, and made a thorough investigation.

The record discloses that there had been two other burglaries in Wellston on this same night. $22 were taken from the Morgan & Hayes store. The Farmers Co-op Elevator, located three doors east of the Morgan & Hayes store was entered and $196.60, two sledge hammers and a tire tool were taken. Herb's Service Station, diagonally across the street from the Morgan & Hayes store, was burglarized and $37.90 in cash, five boxes of spark plugs and two tire tools were taken. The spark plugs were found on a bench in the rear of the Morgan & Hayes store, and the tire tools were found in the front part of the store near the safe.

The sheriff's investigation further disclosed the safe had been battered to pieces, both knobs knocked off and entrance thereto thus made. The fire wall asbestos packing was scattered around over the floor in flakes and granules. Both the defendant and the sheriff testified "it was all over the place". Otherwise, the defendant's testimony was a denial of the sheriff's testimony as to the asbestos flecks and chips.

Sheriff Orr and Deputy Herb Kinnear, after their investigation at the store, being informed a third man, on foot, was seen running west from the store, then turning

south down an alley towards Highway 66, were prompted to drive out a mile and a half west of Wellston onto Highway 66 to the Plainview Service Station. There they observed Roy Lee Booze leaning up against the front of the station. The sheriff asked him what he was doing there, and was informed Booze was waiting to hitch a ride to Oklahoma City. His sport shirt was snagged in several places, and was damp from what appeared to be perspiration. The front of his shirt and collar were partly unbuttoned, and in the hair on his exposed chest were white and chalky chips like those from the asbestos fire wall of the safe in the Morgan & Hayes store. The sheriff said he then placed Booze under arrest, and took him back to the scene of the Morgan & Hayes burglary. In the back of the store the sheriff said he picked the chalky chips off the defendant's chest and put them in an envelope, properly marked for evidentiary purposes.

 On the basis of the sheriff's positive knowledge that a felony had been committed, and being fully aware of the conditions at the scene of the crime, and particularly the asbestos scattered over the premises as the result of the battering administered to the Morgan & Hayes safe, the sheriff had reasonable cause, under the conditions herein before set forth, to believe that the defendant was a participant in the battering administered to the safe, and hence was involved in the burglary, and that his arrest was warranted under the law.

Tit. 22 O.S.1961 § 196 provides:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In Ward v. State, 95 Okl.Cr. 387, 246 P. 2d 761, we said:

"This court has often held that the ruling of a trial court on a motion to suppress evidence will be sustained where there is any competent evidence in the record to sustain the judgment of the court. Griffin v. State, 90 Okl. Cr. 90, 210 P.2d 671; King v. State, 92 Okl.Cr. 389, 223 P.2d 773."

See also Darks v. State, Okl.Cr., 273 P.2d 880, wherein this Court said:

" 'If a * * * peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful, but if he suspects one on his own knowledge of facts; or upon facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful. * * *

" 'If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove that no offense had been committed.'

"This rule was lifted almost verbatim from the decision of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Herein the officer making the arrest had ample facts upon which to suspect a felony had been committed. The best proof of which may be found in the subsequent analysis of the chemist."

In this latter regard the flecks of asbestos taken from the defendant's body and his shirt pocket and from the safe were put in separate envelopes and delivered to the State chemist, J. L. Day, who examined them under a spectrograph. He testified:

"A I found that they had thirteen inorganic elements appearing in the spectrum at the same place, there was no outside elements to interfere. Those elements were calcium, copper, lead, potassium, magneise, aluminum, iron, titanium, silver, sodium, bismuth, silicon and magnesium.

"Q Can you testify as to what ratio proportions that you found those in? A These inorganic elements as analysized by the spectrum reappear at certain places in the moving about and that's what we mean by ratio and proportion.

"Q Now following your analysis there, Mr. Day, would you say that the items, the contents that came from the envelope marked 'dust from safe' and the other coming from the envelope marked 'dust from chest' came from the same material? A They certainly compared quite favorably yet there's always 'an' outside possibility that they might not be the same, but it's very remote considering the number of elements.

"Q What is the outside possibility? A Thirteen to the tenth power, which would be one-tenth of a one hundred thirty billion."

Thus the chemist identified chips or flecks taken from the defendant's shirt pocket and his chest as being the same kind of material as came from the asbestos safe packing.

Under these conditions, it was certainly most reasonable for the sheriff to believe he had one of the burglars when he arrested the defendant. This question as to the sufficiency of the evidence of the defendant to sustain the motion to suppress was one to be determined by the trial court. He considered both that of the defendant and the State, and he elected to believe that of the State and not the defendant. The burden was on the defendant. In Franklin v. State, Okl.Cr., 279 P.2d 1116, and in many other decisions of this Court, the rule is well established that the burden is upon the defendant to sustain by evidence his

motion to suppress. We quote paragraph one of the syllabus as follows:

"Where a motion is made to suppress the evidence by reason of an unlawful or unauthorized search, burden is upon the one making such motion to sustain by evidence the claim that the search was unlawful."

And in Mitchell v. State, 73 Okl.Cr. 184, 119 P.2d 99, the rule is thus stated:

"The Criminal Court of Appeals will not reverse a trial court upon a finding of fact in connection with a motion to suppress the evidence where there is competent evidence in the record reasonably tending to support the findings of the court."

This evidence was entirely competent and sufficient to sustain the trial court's action in overruling the defendant's motion to suppress. This contention is, accordingly, rejected.

The defendant's second contention is that the two envelopes containing fire-wall packing or insulation taken from defendant's person and the battered safe were introduced into evidence, but never opened were permitted to go to the jury room, and there opened and compared by the jury during its deliberations.

The Attorney General argued that he was unable to see how this prejudiced the defendant in view of the fact that the jury heard from the chemist about the contents of the envelopes and the results of his comparisons. It is also asserted that the defendant failed to establish any prejudice to his rights. With these contentions we cannot agree.

It is the fundamental right of the defendant in every felony case to have the evidence received in open court and the comparisons, if such are involved, therein made. Tit. 22 O.S.1961 § 952 provides as follows:

"Grounds for new trial.

"A court in which a trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only:

"First. When the trial has been in his absence, if the charge is for a felony.

"Second. When the jury have received any evidence out of court, other than that resulting from a view of the premises. * * *"

In Territory v. Day, 2 Okl. 409, 37 P. 806, it was said:

"* * * it is the right of every defendant, in a criminal prosecution against him for a felony, to be present in open court at all times during the pendency of his trial. St.Okl.1893, § 5147. This is not only a statutory right, but a constitutional one, and one, too, that cannot be waived."

Cited with approval in this case is Hopt v. People (Utah) 110 U.S. 574, 578, 579, 4 S.Ct. 202, 28 L.Ed. 262; Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377; Prine v. Commonwealth, 18 Pa. 103.

In Territory v. Day, supra, we find the following:

"A leading principle that pervades the entire law of criminal procedure is that, after an indictment is found, nothing shall be done in the absence of the prisoner. While this rule has at times, in cases of misdemeanors, been somewhat relaxed, yet in felonies it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial. * * *"

In 8 R.C.L. § 48, p. 90 the rule announced in Territory v. Day, supra, is approved, and it is also quoted in Humphrey v. State, 3 Okl.Cr. 504, 106 P. 978. And see Rigsby v. State, 55 Okl.Cr. 61, 24 P.2d 1016; Ward v. Territory, 8 Okl. 12, 56 P. 704.

It was said in Stough v. State, 75 Okl.Cr. 62, 128 P.2d 1028: "[N]o determinative step

in the proceeding [shall] be taken in the absence of accused."

There can be no doubt in this case that the jury opened the envelopes and made comparisons in the jury room outside the presence of the defendant. We know they were not opened in open court before the jury, but they were open when they were returned by the jury. This conclusion is too obvious to merit further discussion. The defendant was denied his right of confrontation, and comparisons in his presence. In this conclusion we find ample support in other jurisdictions.

In People v. White, 365 Ill. 499, 6 N.E.2d 1015, in a similar situation it was said in the body of the opinion:

"A large number of instruments bearing the admittedly genuine signature of Clarke were introduced in evidence as standards of the deceased's handwriting. The handwriting experts testified relative to the disputed signature by comparing it with the signatures conceded to have been written by Clarke. The defendant objected to these standards and the reading glass going to the jury room. The objection was overruled and the jury took all of these exhibits with them. The jury had the benefit of the evidence of the witnesses who expressed an opinion of forgery by a comparison of the denied signature with the genuine signatures. In criminal cases the comparison contemplated by the statute is to be made during the reception of the evidence— not without the presence of the defendant."

In People v. Clark, 301 Ill. 428, 134 N.E. 95, the Supreme Court of Illinois said:

"In a prosecution for larceny of an automobile which had been sold by accused to another, where a receipt had been signed by accused for part payment by check, it was error to permit the jury to take with them on retiring, for comparison, the check, the receipt, and other writings proved to have been made by defendant, where such writings had not been read in evidence."

Therein it was further said:

"The constitutional provision that the accused shall have the right to meet the witnesses face to face means that all evidence in a criminal case must be produced in the presence of the accused."

The jury has no right to receive evidence after the cause has been submitted to them, and to permit such to be done amounts to a denial of the defendant's right to appear and defend against such evidence and to be represented by counsel. Okla.Const. Art. II § 20.

This is so fundamental that the erroneous nature of this denial of defendant's constitutional and substantial statutory rights merits a reversal of this case for new trial. There is no end to the mischief that might result if approval were placed on a procedure which exposed to the jury in the presence of the defendant only the envelopes and not their contents, which was the real incriminating matter. One need not be equipped with an imagination of extreme powers to foresee the outgrowth of approving such erroneous fundamental procedure. See also People v. Elias, 316 Ill. 376, 147 N.E. 472.

The defendant's third contention is that the defendant was prejudiced by the county attorney's argument in arraying the residents of one city against the residents of another city, as follows: "Are we going to let the defense attorneys go back to Oklahoma City, slap each other on the back and laugh and say, 'Boy, that Lincoln County was easy?'"; and other similar remarks.

Such conduct has been condemned by this Court in numerous cases holding in a close case such argument would result in reversal. Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643; Melot v. State, Okl.Cr., 375 P.2d 343, and cases cited therein. There is no reason for a county attorney to risk a reversal by such tactics. We warn that such

conduct should not be repeated in this case on a new trial.

For all the above and foregoing reasons, the case is accordingly reversed and remanded for a new trial in a manner not inconsistent with the views herein expressed.

It is so ordered.

The Court acknowledges the aid of Supernumerary Judge John A. Brett in the preparation of this opinion; and after consideration by the members of the Court, the foregoing opinion was adopted by the Court.