## KING v. STATE.

No. A-11291.   Nov. 1, 1950.

Rehearing Denied Jan. 17, 1951.

(223 P. 2d 773.)

390

R. O. Swimmer, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Grady King, was charged by an information filed in the court of common pleas of Oklahoma county with the crime of transporting intoxicating liquor, to wit: 1,152 pints of whisky; was tried; convicted; and pursuant to the verdict of the jury was sentenced to serve six months in the county jail and pay a fine of $500 and costs; and has appealed.

It is first contended that the court erred in overruling the motion to suppress evidence. The evidence introduced at the hearing on the motion to suppress evidence showed that defendant, on February 9, 1949, was driving a Chevrolet panel truck, with windows on the sides and in the rear. The truck was loaded with 48 cases of whisky. While traveling east toward Oklahoma City near what is known as the Guthrie cut-off, the defendant saw Officers Don Stone, and Glenn Roberts in a patrol car and turned his automobile around and started in the other direction. The officers became suspicious of his actions and started following him. Part of the time the officers were up close to the truck and part of the time they were as far as a quarter of a mile to the rear. Officer Stone testified that they got close enough to the panel truck to see the cases of whisky inside the truck. While the officers were following the defendant he drove his car into a dead-end street and was forced to stop. The officers drove up behind defendant, asked him how much whisky he had, and the defendant told them, and further stated that it belonged to him. The officers had no search warrant, nor warrant for the arrest of the accused. The defendant testified at the hearing on the motion to suppress evidence but did not testify at the trial. On the motion to suppress evidence he swore:

"Well, I came in sight of them coming down the road, and I turned around and started back the other way, and I drove approximately a mile and a half or two miles, and I seen that they were going to stop me, and I stopped, and Mr. Stone or Mr. Roberts one asked me—when they walked up to the truck they could see the whisky in there in the truck, after they stopped me, and they asked me if it was mine and I told them it was."

Defendant further testified that if any one approached close enough they could look through the two windows in the back of the panel truck and see the whisky, but swore that the officers never did approach the automobile close enough to see the whisky until after he had stopped. On cross-examination he testified:

"Q. Full enough so that you could stand flat-footed and look through the glass in the doors and see the whisky in the truck? A. Sure, you could walk to any glass around the truck, as high as a person would be, and see anything; see the floor in it. Q. And you could also see—if you stood up in front near the steering wheel and looked back in the back, you could see the whisky from that point, too, couldn't you? A. That is right."

This case is similar in many aspects to the case of Griffin v. State, 90 Okla. Cr. 90, 210 P. 2d 671, 673. It was there stated:

"This court is further bound by the rule announced in numerous cases that whether a search of or seizure from an automobile, parked on a public street, without a warrant, is or is not unreasonable within the meaning of the constitutional provision (Okla. Const. art. 2, § 30) forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made. See Sue Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Blair v. State, 75 Okla. Cr. 265, 130 P. 2d 545. * * *

"The officers were patrolling the streets of Tulsa in the performance of their duty. It also was a part of their official duty to keep under surveillance the acts of any known criminals or suspicious characters. Both the defendant, Griffin, and Dale Wolfe, were known bootleggers. However, even though they were known bootleggers, the officers would not have a right to search their automoblie without a warrant, unless a crime was committed in their presence which would authorize a search of the car.

"The question presented to this court is whether the fact that the officers saw two known whisky dealers passing a sealed carton from one to the other with the distillery name together with the word 'whiskey' stamped thereon, was a violation of the prohibitory liquor laws in the presence of the officers, so as to justify the arrest of the defendant, and the search of his automobile, and seizure of the whisky in question.

"In Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716, 717, it is held: 'Where officer sees a person violating the intoxicating liquor law at a place where the officer has a legal right to be, the officer may without a warrant arrest the person and search his person and immediate possessions for intoxicating liquor.'

"Our Constitution, article 2, section 30, prohibits only 'unreasonable searches or seizures'.

"In Davenport v. State, 71 Okla. Cr. 91, 108 P. 2d 549, the defendant drove his automobile into a public parking place. He left the car and went across the street to a restaurant. Certain policemen who had seen him drive into the parking lot, went to the automobile, looked through a glass window into the car and saw several packages wrapped in brown paper. No whisky was visible, but on each of the packages were written the initials of the kind of liquor each contained, such as J. E. P. for James E. Pepper, etc. The officers recognized the packages as being lugs of whisky; although, no bottles of whisky were in view. The search and seizure was sustained on the ground that a crime was committed in the presence of the officers, which authorized arrest of defendant and search of his automobile.

"In Matthews v State, 67 Okla. Cr. 203, 93 P. 2d 549, 550, certain policemen of Enid were following the custom of checking the cars left on the streets of Enid at night to see whether they were locked, or had articles of value that might be stolen. The officers saw a carton on the floor of the car labeled 'Paul Jones Whisky', and two or three other cartons beside it, and a bottle in the car. This Court stated: 'In the case at bar, the undis-

puted facts and circumstances as testified to by the officers, were sufficient to warrant them in believing that intoxicating liquor was in the cartons and bottle laying on the floor of the automobile, and this was a sufficient showing of an offense committed in the presence of the officers, and the defendant admitted, while their investigation was in progress, that the trunk on the car contained whisky that belonged to him. The admissions against interest made by the defendant were conclusive as to his guilt of the offense charged.'

"In Young v. State, 71 Okla. Cr. 112, 108 P. 2d 1028, the defendant had stopped his automobile in a line of traffic behind a truck which was stuck in a snow bank. Some Deputy Sheriffs were driving on the highway and stopped their car in the line of traffic, got out to assist in pushing the truck, and as they passed the car of defendant, they saw a number of packages of whisky wrapped in brown paper laying in the car. No bottles were in sight, but the officers recognized the packages as being lugs of whisky. The law is stated in the syllabus as follows: 'Where one is transporting large quantities of intoxicating liquor upon the public highway, and an officer in the lawful discharge of his duty observes through the window of the car the intoxicating liquor upon the seat and floor of said car, it is not necessary to procure a search warrant before arresting defendant and searching the automobile, for the reason that a crime is being committed in his presence. Oklahoma Statutes 1931, sec. 2780, Oklahoma Statutes Annotated, title 22, § 196.'

"See, also, Franklin v. State, 71 Okla. Cr. 115, 109 P. 2d 239, and Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366."

The cases cited by defendant supporting his contention that the search was illegal would not apply herein for the reason that the defendant stopped his car on a public highway at a place where the officers had a right to be. Under the defendant's own admissions, the officers did not search his car, nor make an arrest until

after they had seen the whisky as they were approaching defendant's truck. Under such facts the trial court properly overruled the motion to suppress evidence.

It is next contended that the trial court committed error in permitting the state to introduce two certificates from the Collector of Internal Revenue certifying that the defendant was the holder of a federal retail dealer's liquor license and also of a federal wholesale liquor dealer's license on the ground that the license did not show that it was in effect at the date of the arrest of defendant. These two exhibits showed on their face the amount of tax which was paid for the issuance of the license and recited that it was effective from July, 1948. Attached to the motion for new trial of defendant was what was purportedly a photographic copy of the license, which recites that it was effective from 7-1-48 to 6-30-49; evidently being issued for the fiscal year commencing July 1, 1948, and ending June 30, 1949. This identical issue has been considered and decided adversely to the defendant in the companion case of King v. State, 92 Okla. Cr. 267, 222 P. 2d 771.

It is next contended that the county attorney committed reversible error in his argument to the jury. This alleged error is directed at the comment of the county attorney in his argument wherein he called the attention of the jury to the fact that defendant held both a federal retail and wholesale dealer's license; that he was caught with 1,152 pints of whisky, and was therefore a big operator and should be given the maximum punishment. His exact words were: "You have before you a big time operator, one of the big boys, caught red-handed transporting 1,152 pints of liquor.

Courts should be liberal in allowing counsel on either side a wide range for freedom of discussion. How-

ever, this liberality does not go to the extent of permitting counsel to go outside of the record in stating facts wholly unsupported by the record. However, he is permitted to make reasonable deductions from the evidence, and unless this court can say after an examination of the argument complained of that it was such as deprived the defendant of a fair trial, and by this we mean that it was such that it would arouse the passion and the prejudice of the jury to such an extent that they would be swayed from arriving at a just verdict, the judgment and sentence will not be set aside on appeal. Gregg v. State, 69 Okla. Cr. 103, 101 P. 2d 289. The argument here complained of is altogether proper.

The next assignment of error is based upon the following objection which counsel made at the commencement of the trial.

"By Mr. Swimmer: Comes now the defendant and objects to going to trial in case number 10952 for the reason that the jury has not returned a verdict in case number 10684 against the defendant Grady King, and that proceeding to trial in the presence of a new jury in case number 10952 would be highly prejudicial, when the defendant's fate is being determined and decided by a jury which has not returned to the court room, and therefore counsel for the defense says that the rights of his client would be prejudiced if he is forced to go to trial prior to the time that the jury which is now out comes back into the court room, and renders a verdict either for or against the defendant. By the Court: Overruled. Allow an exception. By Mr. Swimmer: Exception."

Nothing else appears in the record pertaining to this particular matter. The voir dire examination of the jurors is not contained in the record and there is no further evidence in the record to show the defendant was in any way prejudiced at all by proceeding to trial. With-

out something more than the mere objection of counsel for defendant to show the nature of the proceeding, it is impossible for us to conclude that the defendant was prejudiced by proceeding to trial at the time the trial was held.

No substantial error appearing in the record, the judgment and sentence of the court of common pleas of Oklahoma county is affirmed.

BRETT and POWELL, JJ., concur.