## WARD v. STATE.

No. A-11573.   July 16, 1952.

(246 P. 2d 761.)

Paul W. Updegraff, Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Ass't Atty. Gen., for defendant in error.

JONES, J.   The defendant, Kenneth Ward, was jointly charged with one William Lee Dover with the crime of burglary in the second degree, allegedly committed on January 24, 1950, by breaking into and entering a building known as the Greenleaf Market, located in the city of Norman and owned by one Joe W. Birchum.   A severance was granted; Ward was tried, convicted, and sen-

tenced to serve three years imprisonment in the State Penitentiary, and has appealed.

The proof of the state showed that the door to the grocery was opened and the store entered on the night of January 24, 1950. Approximately $191 in cash and other articles of personal property were taken by the burglars. Later the chief of police received information that Kenneth Ward had exchanged several dollars in small coins with a taxi driver in Norman for some large bills. Acting on the information which they had received, the chief of police and two other police officers went to the apartment occupied by Ward, arrested him, searched the premises, and recovered approximately $155 in currency and other merchandise which had been taken in the Greenleaf Market burglary, and also in the burglaries of other stores which had been recently committed.

On the day of his arrest the defendant admitted to the officers that he had committed the burglaries, including the one herein involved. At the trial defendant did not testify.

The sole issue presented by the appeal is whether the court erred in overruling the motion to suppress evidence presented by counsel for defendant prior to the commencement of the trial. The proof at the hearing on the motion to suppress evidence showed that the officers had no warrant for the arrest of the defendant, and had no search warrant authorizing a search of his premises. Defendant contends that an unlawful search was made, and, subsequent to the seizure of the articles by means of the unlawful search, defendant was arrested and the charge of burglary filed against him based on the alleged unlawful search. The state, on the other hand, contended that the officers arrested the defendant upon reasonable cause for believing that he had committed several burglaries and that having arrested him they had a legal right to make a search of his person and premises for evidence of his guilt.

There was some discrepancy in the testimony of the police officers as to the actual time the accused was arrested. Chief of Police Wheeler testified that accompanied by policemen Bailey and Dodd he went to the premises occupied by Ward, knocked on the door, that Ward peeked under a drawn curtain to see who was at the door and then opened the door admitting the officers to the house; that Wheeler then immediately arrested Ward upon suspicion for having committed the burglaries in Norman; that about that time William Lee Dover dashed from the house and policemen Bailey and Dodd pursued him until he was captured about one and one-half blocks from the premises.

Policemen Bailey and Dodd testified to going to the premises with Wheeler; that Wheeler knocked on the door and Ward opened the door and admitted the officers; that Wheeler said, "We want to look around", and Ward said, "Go ahead"; that there was a cigar box on the dresser containing some money which Wheeler seized; that Dover then ran from the premises and Bailey and Dodd pursued him; that when they returned Wheeler had Ward in the automobile in front of the house and instructed Bailey and Dodd to take Ward and Dover to the county jail. The officers then returned and helped search the premises and found some fresh meat, a radio, and other articles which were later identified as having been taken in the burglaries. Officer Dodd, when asked the specific question as to whether he knew when Wheeler placed Ward under arrest, stated, "No I don't".

Chief Wheeler testified:

"Q. What did you say to him, Chief, when you went on the inside, if you remember? A. I don't remember every word that was said, immediately as I

stepped inside all this commotion began to happen. Q. Do you remember seeing anything in there, any material that was reported to you as having been taken in these burglaries before you heard the man run out the back door? A. No I didn't. Q. It was a matter of seconds when you walked in until this man ran out the back door? A. Oh yes, I didn't hardly get in the back door and Bailey was behind me and walked over and looked at this guy and I was with Kenneth. Bailey run off and Dodd was around in the back and they chased him four or five blocks. Q. They didn't know who he was? What did you say to Ward when this happened? A. I told him he was under arrest and had him sit on the side of the bed, he was acting just as though he wanted to get out, kept looking around the room, over to the further side of this door and I told him to sit on the side of the bed. · He wanted to put on his shoes and I asked him not to. Q. How far were you from him? A. Hardly as far as from here to the table. Q. Did you have any warrant with you? A. No sir. Q. Do you remember whether or not you told Kenneth he was under arrest at that time? A. I am sure that I did, just after this boy ran out of the room and he kept looking around the room there. Q. All right now, at a later time, at any time after that did you ever tell him he was under arrest? A. Yes, sure, he understood out there in the car, we talked quite a bit sitting there in the car, it was just a few minutes. Q. You testified that the arrest was made in the room there? A. Yes. Q. Now, after the arrest was made, what did you do? A. I had him sit on the side of the bed until we got the other boy back in here and I took Kenneth outside. Q. Did you look around the room any? A. After we had Kenneth and Dover outside we looked around in the room, this right dresser drawer, saw this money in there, pulled it open, he was standing right by me and I asked him whose it was and he said it is mine, I said, where did you get it, and he said, oh, I have been saving it up."

Kenneth Ward testified at the hearing on the motion to suppress that the officers came to his place and knocked on the door; that they were dressed in civilian clothes and he did not know who they were; that he opened the door and the chief of police pushed right in and said, "I want to talk to you"; that he then walked over to the dresser and pulled out a drawer and asked the defendant where he got all those bills; that Dover ran out of the room and the other officers took after him; that when Bailey and Dodd returned they took him and Dover to the county jail; that he never at any time gave the officers permission to search his premises.

By statute it is provided that an officer may arrest without a warrant:

"When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." 22 O. S. 1951 § 196, subd. 3.

In the case of Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122, 124, this court held:

" 'A peace officer may arrest one on a well-founded suspicion for the commission of a felony, where a felony has in fact been committed, and the officer has reasonable grounds to believe that the person arrested was the perpetrator.'
* * *

" 'The immunity guaranteed by section 30 of the Bill of Rights (Const. art. 2) against unlawful searches and seizures does not extend to the implements of crime, records, papers, or other things found on the person * * * lawfully placed under arrest, where such implements, records, papers, or other things have been or manifestly may be used to perpetrate the crime charged."

In the case of Hardin v. State, 56 Okla. Cr. 440, 41 P. 2d 922, 923, it was stated in the body of the opinion:

"After being informed of the shooting, the officers interviewed several persons, including the person shot, and, as a result of the information secured,

arrested defendant and as an incident to the arrest made the search. Section 2780, Okla. Stat. 1931 [22 O. S. 1951 § 196], sets out the conditions under which an officer may arrest without a warrant:

" 'A peace officer may, without a warrant, arrest a person: * * *

" 'Third. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

" 'Fourth. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested.'

"The officers were authorized to arrest with a warrant. Sallee v. State, 51 Okla. Cr. 414, 1 P. (2d) 794. Welch v. State, 30 Okla. Cr. 330, 236 P. 68, syllabus 3: 'Arrest by peace officer who, from his own knowledge or facts communicated to him, has reasonable ground to believe accused guilty of felony is not unlawful.'

"See, also, Gaines v. State, 28 Okla. Cr. 353, 230 P. 946; Sallee v. State, 54 Okla. Cr. 217, 17 P. 2d 520; Moore v. State, 51 Okla. Cr. 411, 1 P. (2d) 813. See, also, Grau v. Forge, 183 Ky. 521, 209 S.W. 369, 3 A.L.R. 642. The officers having lawfully arrested defendant, the search was not unlawful, even though the evidence obtained thereby was of another crime. State v. McDaniel, 115 Or. 187, 231 P. 965, 237 P. 373, 374, holds: 'Under Or.L. §§ 1753, 1757, defining "arrest" as taking of person into custody that he "may" be held to answer for "a" crime, and providing that arrest may be made by an actual restraint, or by submission to custody of officer, held arrest for offense of drunkenness in public place or driving car while in intoxicated condition, and search of defendant was not unlawful because defendant was thereafter charged with an offense of which search showed him guilty, rather than offense for which he was arrested.' "

In Hargus v. State, 58 Okla. Cr. 301, 54 P. 2d 211, 212, it was stated:

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed."

There was ample evidence before the trial court not only that the defendant was lawfully arrested and the search of the premises made after the arrest, but also that there was a waiver of the defendant's right to immunity from an unlawful search. In Camp v. State, 70 Okla. Cr. 68, 104 P. 2d 572, it is held:

"The right to immunity from a search and seizure without a search warrant may be waived. * * *

"Where police officers stop a person for the purpose of making inquiry as to certain actions which look suspicious and ask and are given permission to examine a package in the automobile, such permission on the part of the accused constitutes a waiver of his constitutional right to immunity from a search and seizure without a search warrant."

It is our conclusion that there was abundant evidence in the record to sustain the judgment of the trial court when he overruled the motion to suppress evidence. This court has often held that the ruling of a trial court on a motion to suppress evidence will be sustained where there is any competent evidence in the record to sustain the judgment of the court. Griffin v. State, 90 Okla. Cr. 90, 210 P. 2d. 671; King v. State, 92 Okla. Cr. 389, 223 P. 2d 773.

The judgment and sentence of the district court of Cleveland county is affirmed.

BRETT, P. J., and POWELL, J., concur.