Donald Horace HOLT and Robert Lee Green,
Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–75–714.

Court of Criminal Appeals of Oklahoma.

June 15, 1976.

John Connolly, Oklahoma City, Pete Silva, Jr., Asst. Public Defender, Tulsa County, for appellants.

OPINION

BUSSEY, Judge:

Appellants, Donald Horace Holt and Robert Lee Green, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–2985, for the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp.1973, § 801. At the conclusion of the two stage trial, the jury assessed, and the court imposed, a sentence of five hundred (500) years' imprisonment for each defendant. From said judgment and sentence, a timely appeal has been perfected to this Court.

At the outset of this opinion, we observe that the instant case is a companion case to

*Satterlee v. State,* Okl.Cr., 549 P.2d 104 (1976), wherein the conviction of an accomplice was recently affirmed by this Court. Numerous references will be made thereto throughout the course of this opinion. After the preliminary hearing, the defendants herein were granted a severance resulting in a separate trial which now comes before us on appeal.

The State's first witness at trial was Charles Eugene Gates, a registered pharmacist and owner of Gene Gates Pharmacy. He testified that on December 19, 1974, at 9:05 a.m. which was shortly after he and his nephew opened the store, he observed a gunman, wearing a ski mask and jumpsuit, enter his pharmacy through the front door. Gates stated that he then ran for the back door to get help but as he opened the door he was confronted by more gunmen who were also wearing ski masks and jumpsuits. He was then directed back into the pharmacy where his nephew was lying on the floor with a gunman on top of him pointing a gun at his head. One of the gunmen produced an off-green colored satchel about 18 inches long and directed the witness to fill the bag with drugs. After filling the bag with narcotics which had been labeled and coded, he and his nephew were directed to turn over money from the store and their persons, which amounted to about $240.00. The witness further related that before the gunmen left the pharmacy one of them asked for some syringes, whereupon Gates took a "handful" and threw them into the bag.

Gates identified State's Exhibit No. 1, a bag, as "the same type of bag," in which he placed the drugs on December 19, 1974. He further identified several narcotic bottles and syringes as the ones which were taken from his store. Gates concluded by stating that he did not give the defendants permission to take the items from his store.

Steven Gates, a pharmacy student who was working for his uncle Gene Gates, during Christmas break in December of 1974, next testified and corroborated his uncle's testimony. Young Gates further related that after being pinned to the floor by one of the gunmen said gunman struck him numerous times on the head and on the arm with a pistol.

The State next called Allen Handley, a Police Officer for the City of Broken Arrow. Officer Handley testified that while driving on patrol on December 19, 1974, at about 9:30 a.m., he heard a newscast on KRMG which stated that an armed robbery had occurred at the Gene Gates Pharmacy and that three men wearing ski masks had escaped with an undetermined amount of money and drugs. Thereafter, while driving north on 161st Street East Avenue, he crested a hill and met a white Cadillac containing three subjects, and noticed clothes flying out of the car. The witness stated that soon after passing the car he stopped on the roadway and observed the articles of clothing, including a ski mask, which had been thrown out of the southbound vehicle. Thereupon, he turned his patrol car around and made chase of the Cadillac and pulled over the same. The driver then exited and said, "Man, I'm a litterbug." (Tr. 50) The driver was then directed to get into the patrol car and to produce a driver's license. The driver produced a Texas driver's license bearing the name "Robert Lee Green."

Handley further testified that he called for a backup unit and three officers responded to the call. One Detective was directed to retrieve the articles of clothing which had been thrown out of the car onto the road; another, Officer Steves, was directed to get into the patrol car behind Mr. Green, who was in the front seat. The witness then verified the armed robbery with Tulsa authorities, whereupon he and Officer Crosby approached the suspects' vehicle, opened the left rear door and asked the remaining two occupants for identification. One occupant produced an Oklahoma driver's license, bearing the name "Satterlee"; the other occupant, who had no identification, stated that his name

was "Donald Holt." Handley further related that upon opening the door he saw a bottle laying on the floorboard labeled "APC with Demerol." He also noticed that the back seat was pulled out approximately six inches and looking through the rear glass he could see behind it, and saw "a quantity of pill bottles and some white packages that looked like they contained disposable syringes, and the corner of what [he] thought was money." (Tr. 53) With Green driving the Cadillac and with his confederates secured in patrol cars, the officers then took the trio and the Cadillac to the Broken Arrow Police Station. Upon arriving at the station, the officers put the three men in the Broken Arrow Jail. At that point Handley turned the investigation over to the Tulsa Police Department.

During the course of Officer Handley's testimony, he made positive identification of the defendants. He further identified State's Exhibit No. 6, as being "the same type of bottle" that he had seen laying on the floorboard of the vehicle.

On cross-examination, Handley testified that after seeing the articles of clothing on the roadway and recalling the newscast over KRMG, he became "suspicious." He further related that on the same afternoon he called the radio station and inquired about the newscast which he had heard that morning.

On redirect, Handley stated that he arrested the trio because he was "suspicious" that they had been involved in the armed robbery. He then identified State's Exhibit No. 7, a ski mask, as "similar" to the ski mask which he had seen laying on the roadway. He further related that he called the radio station merely to verify what he had heard over the radio that morning.

The State's next witness was Heinz Steves, a Broken Arrow Police Officer. Steves testified that he responded to Officer Handley's call for a backup unit on December 19, 1974. Officer Steves stated that he was directed to watch defendant Green in the police cruiser and the two other people in the Cadillac from his position in the back seat of the cruiser. He further related that he observed the person sitting in the right rear seat of the Cadillac appear to be "pushing something down in the seat." (Tr. 84) He also identified the defendants.

The State's final witness was Jess McCullough, a Police Officer for the City of Tulsa. McCullough testified that on December 19, 1974, he along with Detective Dennit Morris were directed to go to the Broken Arrow Police Station to investigate the Gates Pharmacy robbery. Upon arriving at the Broken Arrow Police Station he observed a white Cadillac in the alley. He stated that standing outside the car, he looked inside and saw a brown Demerol bottle. He further related that the back rest of the back seat was pulled away five or six inches from its holding allowing him to see a brown zipper type bag and numerous pill bottles behind the seat. The witness then identified State's Exhibit No. 1, a brown zippered bag, as the one taken from behind the back seat, and State's Exhibit No. 6, a Demerol bottle, as the bottle which had been laying on the floorboard of the back seat. He further identified a number of State's Exhibits as items which were taken from the car during an "inventory search." The witness testified that approximately $240.00 was taken from the defendants' persons and car.

On cross-examination, Officer McCullough stated that the original inventory did not reflect that $240.00 had been found.

The State then rested, and no evidence was offered by either defendant.

In the second stage of the bifurcated proceeding, the State introduced evidence showing that defendant Donald Horace Holt was previously convicted of the following crimes, to wit: Unauthorized Use of a Motor Vehicle; Unauthorized Use of a Vehicle, After Former Conviction of a Felony; Burglary in the Second Degree, After Former Conviction of a Felony; and, Possession of Narcotics, After Form-

er Conviction of a Felony, and that defendant Robert Lee Green was previously convicted of the following crimes, to wit: Assault and Battery with a Dangerous Weapon; Robbery With Firearms; and, Burglary in the Second Degree.

The defendants' first assignment of error is that the trial court erred in not remanding the case for further preliminary hearing before an impartial magistrate. We need only advert to the case of *Satterlee v. State,* supra, wherein we reviewed the preliminary hearing and found the record devoid of any prejudice whatsoever. Defendants herein appeared conjointly with Satterlee in the preliminary hearing regarding the Gates Pharmacy robbery. Therefore defendants' first assignment of error is wholly without merit.

Defendants' second assignment of error asserts that the trial court erred in not sustaining the defendants' motion to suppress items seized in violation of the defendants' constitutional right against unreasonable search and seizure.

■ At the motion to suppress hearing, defendant Robert Lee Green testified that when he went to the officer's car, there was no opening between the back seat and the trunk of the Cadillac. He further testified that there were no bottles of any controlled drugs on the floor in the front seat or the back seat of the automobile at that time. He stated that after they arrived at the Broken Arrow Police Station he saw two officers pulling the back seat out.

We note that in *Ellis v. State,* Okl.Cr., 476 P.2d 352 (1970), at page 353, quoting from *Ward v. State,* 95 Okl.Cr. 387, 246 P.2d 761 (1952), this Court held that:

" '* * * the ruling of a trial court on a motion to suppress evidence will be sustained where there is any competent evidence in the record to sustain the judgment of the court.' "

In the instant case, there is competent evidence in the record showing that the officer did, in fact, see the items in plain view, which is supportive of the judgment of the trial court. Further, we need only again advert to the case of *Satterlee v. State,* supra, to dispose of defendants' second assignment of error. In the *Satterlee* case, we held that the facts and circumstances in the instant case justified a warrantless arrest and search.

■ Defendants next contend that there was insufficient evidence in the second stage of the proceedings to identify defendants as the same persons in the felony convictions offered and received into evidence. In the first paragraph to the Syllabus of *Williams v. State,* Okl.Cr., 364 P.2d 702 (1961), this Court held that:

"In regard to proof of former conviction under the Habitual Criminal Act, 21 O. S. (1951) § 51, the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity. This will leave the question of identity to be determined by the jury, after a proper instruction has been given, upon a consideration of all surrounding facts and circumstances, such as commonness or unusualness of the name, the character of the former crime or crimes, and the place of its commission:"

See *Haughey v. State,* Okl.Cr., 447 P.2d 1019 (1969); *Warren v. State,* Okl.Cr., 537 P.2d 443 (1975), and, *Sessions v. State,* Okl.Cr., 494 P.2d 351 (1972).

Defendants next contend that the trial court committed error in allowing improper comments to be made by the prosecuting attorney, and that the punishment imposed by the jury was excessive as it was given under the influence of passion or prejudice.

In this regard we held in *Satterlee v. State,* supra, that:

". . . The appropriate inquiry made on an ad hoc case by case approach is whether in light of the totality of the closing argument the prosecuting attor-

ney makes such an unmistakable reference to the pardon and parole system of Oklahoma as to result in prejudice to the defendant, thus meriting modification if the reference occurs during the second stage of the bifurcated proceeding. . . ."

See, *Webb v. State*, Okl.Cr., 546 P.2d 642 (1976); *Carbray v. State*, Okl.Cr., 545 P.2d 813 (1976).

After a careful review of the closing argument, we are of the opinion that justice dictates modification of the punishment. We are of the opinion that the prosecuting attorney's numerous references to "assure," "insure" and "guarantee" that defendants be kept off the street and are not given another chance, (Tr. 170–174 and 180–183), taken cumulatively, implanted the seed of prejudice. Thereafter the prosecuting attorney seized upon defense counsel's reference to "parole," (Tr. 182), in his objection to the aforementioned references to make an uninvited remark about parole which, when placed in context (Tr. 183 and 176), suggested to the jury that parole considerations necessitated a lengthy sentence.

Therefore, we are constrained to modify the judgments and sentences from a term of five hundred (500) years to Life imprisonment for each defendant. The judgments and sentences so *MODIFIED* are *AFFIRMED*; further, the trial court is directed to enter its order nunc pro tunc correcting the judgments and sentences to correspond with the jury verdict finding defendants guilty of Robbery With Firearms, *After Former Conviction of a Felony*, and transmit a copy of the judgments and sentences, so corrected, to the Department of Corrections, the Warden of the State Penitentiary, and the Pardon and Parole Board, and the clerk file the originals in Tulsa County District Court Case No. CRF–74–2985.

BLISS, J., concurs.

BRETT, P. J., concurs in results.