**Brent Volcey FIELDS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-81-269.**

Court of Criminal Appeals of Oklahoma.

June 23, 1982.

Rehearing Denied July 28, 1982.

---

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan M. McNaughton, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

The appellant was convicted in the District Court of Tulsa County for Larceny of Merchandise from a Retailer, After Former Conviction of Three Felonies. He was sentenced to twenty (20) years' imprisonment.

On April 4, 1980, a security guard in a Tulsa, Oklahoma, Target Store observed the appellant place a radio in a shopping cart and exit the store with the cart and radio without paying.

Only two issues raised on appeal need be addressed in this opinion. First the appellant claims he was denied his right to a speedy trial. The record shows he was originally taken into custody on April 4, 1980, and that his jury trial was eventually set for May 21, 1980, which was later passed to July 23, 1980. On that date, the appellant failed to appear for trial and a bench warrant was issued for his arrest. Jury trial was then reset and passed three more times until it was held on October 20, 1980.

In considering a claim that the right to speedy trial has been violated, we apply the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), where the conduct of both the prosecution and the defendant are weighed. Four factors considered are the length of delay, the reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant. *See Bauhaus v. State*, 532 P.2d 434 (Okl.Cr.1975).

Other than the appellant's failure to appear, the record does not indicate the reasons for the postponements. Nonetheless, the three-month delay to October 20, 1980, commencing from July 23, 1980, when the appellant failed to appear, is not sufficiently long to raise by itself a presumption of undue delay. *See Jones v. State*, 595 P.2d 1344 (Okl.Cr.1979). A defendant should not be permitted to urge a dismissal for delay when it is clear that he or she has contributed to such delay. *Barker v. Wingo*, supra; *Jones v. State*, supra; *Rose v. State*, 509 P.2d 1368 (Okl.Cr.1973). Additionally, there does not appear on the record

any assertion of the right to a speedy trial until the day of trial on October 20, when the appellant argued his motion to dismiss.

The appellant alleges he was prejudiced by the delays because his brother, whom he designates as a material witness, had since been transferred to Hawaii by the Army, and was no longer available to testify. After evaluating what the anticipated testimony consisted of, we find that the witness was not material and his absence did not substantially impair the defense. A dismissal of the case is therefore not warranted.

The next issue involves a claim that the prosecutor improperly cross-examined the appellant on the subject of his post-arrest silence. The appellant urges reversal based on the following to which his timely objection and request for a mistrial were overruled:

Q: —not handcuffed, and you rode all the way from 1700 South Yale to the police station right over next door and you never once told that police officer, "I didn't do it"?

A: Oh, I probably—

■ A person has the right to remain silent when arrested and accused of a crime. U.S.C.A.Const.Amends. 5, 14. The use of a defendant's silence at the time of arrest, after receiving *Miranda* warnings, for purposes of impeachment violates Fourteenth Amendment due process. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). For a prosecutor to comment on the exercise of a defendant's *Miranda* rights is to negate the rights given. *Watt v. City of Oklahoma City*, 628 P.2d 371 (Okl.Cr.1981) (Cornish dissents).

Silence in the wake of *Miranda* warnings, can be construed as nothing more than an exercise of *Miranda* rights. *Warthen v. State*, 559 P.2d 483 (Okl.Cr.1977). As the *Doyle* court wrote, there is an implicit assurance in the warnings that the exercise of silence will carry no penalty. It would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. 426 U.S. at 618, 96 S.Ct. at 2245.

■ It is beyond question that silence may not be used against an accused to establish the commission of a crime. *Prince v. State*, 620 P.2d 431 (Okl.Cr.1980). To advise an accused of his right to remain silent only to later violate that right at trial, runs afoul with basic fairness and our system of criminal justice.

■ We hold that the State's inquiry constitutes clear and reversible error. The judgment and sentence is REVERSED and REMANDED for new trial.

BUSSEY, Judge, dissenting:

The rule enunciated in *Doyle*, supra, has no application in the instant case. From a review of the record, it appears that after the defendant had been detained by Security Officer Peacock, he was asked why he took the radio without paying for it and responded that, "I don't know." Furthermore, when he was advised that the police had been summoned, the defendant requested to speak with the Store Manager stating, ". . . I want to ask him if I can pay for it and never come back to the store."

Testifying in his own behalf, the defendant denied any intention to steal, admitted that he had made a statement to Security Officer Peacock, but maintained that he had told him that he had no intention to steal the radio, but had secured it so that it could be purchased by his brother (who was in the military) who was waiting outside the store. When questioned as to whether or not he had informed Officer Paulson, the arresting officer, that his brother was with him, he stated that he did not remember what he had said to the officer at that time. Later, the defendant stated that he had probably told the officer that he had not done it. This hardly appears to be the exercise of a right to remain silent as contemplated in *Doyle*.

Even assuming however, that the record would support such a conclusion, (which I do not concede) I am of the opinion that the overwhelming evidence of the guilt of the defendant, if submitted to another jury,

could only result in the same verdict as was rendered herein. In sum, the error if any was harmless beyond a reasonable doubt. I would affirm the conviction.