**Harold Richard HENAGER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F-83-436.**

Court of Criminal Appeals of Oklahoma.

Feb. 4, 1986.

As Corrected Feb. 7, 1986.

Rehearing Denied April 28, 1986.

Patti Palmer, Deputy Appellate Public Defender, Larry Siria, Legal Intern, Norman, for appellant.

Michael C. Turpen, Atty. Gen., David W. Lee, Asst. Atty. Gen., Jean M. Leblanc, Legal Intern, Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Harold Richard Henager, was tried and convicted in January 1983, in the District Court of Cleveland County, of Burglary in the Second Degree, After Former Conviction of a Felony, Case No. CRF–81–519, pursuant to 21 O.S.1981, § 1435, and of Feloniously Pointing a Weapon, After Former Conviction of a Felony, Case No. CRF–81–520, pursuant to 21 O.S.1981, § 1289.16. He was sentenced to twenty years on each count, sentences to run concurrently.

On the afternoon of September 18, 1981, James Hensley returned to his mobile home and noticed a strange vehicle parked in the drive. As he approached the home, a man burst through the back door, pointing a weapon at Mr. Hensley, and shouting at him to get inside and not to look at the perpetrator. Mr. Hensley entered the home, which appeared to have been ransacked. Four days later appellant was charged with the crimes, based on the victim's description of his assailant, his identification of the appellant from a photographic line-up, and appellant's admitted connection with the vehicle parked in Mr. Hensley's drive.

The appellant alleges seven assignments of error. We will consider them in the order presented.

## I.

In his first assignment of error, appellant claims that the State failed to bring him to trial within the 180-day period provided in the Interstate Agreement on Detainers, 22 O.S.1981, § 1347, Article III(a), (b), & (c).

Appellant was first taken before the Cleveland County District Court on September 29, 1981. Appellant failed to appear at his preliminary hearing, which, after several postponements, was scheduled for January 4, 1982. At that time, the State learned the appellant was in custody at the El Reno Federal Correctional Facility. The hearing was continued to March 8, 1982, to allow the State to comply with the procedures set out in the Interstate Agreement on Detainers.

Appellant contends that he first wrote to the Cleveland County District Attorney on January 11, 1982, informing her that he was incarcerated in the Federal Correctional Facility at Texarkana, Texas, and asking for disposition of any charges pending. The only evidence in the record of this letter is found as an exhibit in a motion filed in January 1983.

On January 29, 1982, the State filed a detainer, in compliance with the Agreement, with the El Reno facility.

On March 11, 1982, appellant filed a motion to dismiss for lack of a speedy trial.

On May 5, 1982, the State filed a detainer with the Federal Correctional Facility at Texarkana, Texas, in compliance with the Agreement.

On June 9, 1982, an offer to Deliver Temporary Custody by the Federal Officials in Texarkana, dated June 4, 1982, was filed in Cleveland County.

The Interstate Agreement on Detainers provides that after a detainer has been filed with a facility, the defendant shall be brought to trial within 180 days of giving notice to the appropriate court of jurisdiction and the prosecuting officer thereof. The notice is to be forwarded by the defendant through the official having custody of him, and is to include certain details concerning his imprisonment.

Appellant's alleged notice of January 11, 1982, was not effective under the statute for two reasons. First, there was no detainer filed as of that time, and thus the Agreement was not yet applicable. The 180-day period is not triggered until a detainer is filed by the requesting state. *Gilbreath v. State*, 651 P.2d 699 (Okl.Cr. 1982). Second, the notice was not accompanied by the Certificate of Inmate Status as required by Art. III(a) of the Agreement.

Although this Court has not yet looked at the issue of how strictly a prisoner must be held to comply with the statute,

we agree with the Delaware Supreme Court that "the Legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him." *Pittman v. State*, 301 A.2d 509, 512–13 (Del.1973). Mr. Henager's failure to comply with the Interstate Agreement on Detainers, however, is not fatal to his claim under it. We hold that where the prisoner fails to follow the procedure set out by statute and there is no neglect on the part of officials from either the sending or receiving State, the 180-day period is not triggered until the prosecutor and the appropriate court have received written notice of the prisoner's request and the Certificate of Inmate Status, as required under Art. III of the Agreement. Appellant's Motion of March 11, 1982, served as notice, but was not effective under the statute until a detainer was filed and the required information, forwarded by the warden at Texarkana, was received by the district attorney on June 9, 1982. The 180-day period ended on December 6, 1982.

Art. III(a) of the Agreement provides that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

On October 1, 1982, appellant appeared pursuant to the Interstate Agreement on Detainers. The preliminary hearing was set for, and held on, October 14, 1982. At that time formal arraignment was set for October 29, 1982, and continued by Agreement until November 12, 1982. On that date, which was prior to the expiration of the 180-day period, a second continuance was granted, by joint agreement, thus tolling the running of the 180-day period. The formal arraignment was reset for January 13, 1983, at which time trial was set for, and held on, January 19, 1983. We hold that the State complied with the Interstate Agreement on Detainers and that this case does not present grounds for dismissal under the Agreement.

## II.

In his second assignment of error, appellant contends that he was denied a speedy trial as guaranteed him by the Sixth Amendment, due to the lapse of time between the filing of the information on September 22, 1981, and his trial, on January 19, 1983.

In *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the Supreme Court held the Sixth Amendment applicable to the states by operation of the Fourteenth Amendment. The Court there imposed the duties of good faith and diligence on the states in bringing criminal defendants to trial.

The prosecutor must make a diligent good faith effort to bring the accused to trial, even if he is incarcerated in another jurisdiction. A good faith effort includes an attempt to secure the prisoner through a writ of habeas corpus ad prosequendum, or by extradition procedures. *Miracle v. Jackson County District Court*, 521 P.2d 837 (Okl.Cr.1974).

The *Smith v. Hooey* requirement applies as soon as the State learns a suspect against whom it has a detainer is in custody within another jurisdiction. *Richardson v. State*, 600 P.2d 361 (Okl.Cr.1979). Appellant claims that he notified the Cleveland County District Attorney of his incarceration in the Federal Correctional Facility at Texarkana, Texas, on January 11, 1982. However, we do not feel that this claim is substantiated by the record. The District Court was aware of Mr. Henager's incarceration in some federal facility and attempted to obtain custody of him for trial, but, for whatever reasons, was unable to determine where the appellant was incarcerated until March when appellant filed his motion to dismiss. A detainer was filed with the officials at Texarkana on May 5, 1982. The procedure to gain temporary custody of appellant pursuant to the Interstate Agreement on Detainers was begun at that time. The State's actions in attempting to gain custody of Mr. Henager

constitute a diligent, good faith effort to bring him to trial.

This Court, in *Rose v. State,* 509 P.2d 1368 (Okl.Cr.1973), adopted the test set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to aid in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. The test requires the balancing of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the resulting prejudice to the defendant.

In considering the length of the delay we find that the lapse of 484 days from the filing of the information to the date of trial necessitates inquiry into the remaining factors set out in *Barker.*

■ From the record, appellant appears to be at least partially responsible for the delay. The length of the delay was due to failure of appellant to appear, his appearance without counsel, motions filed by the appellant, and continuances requested by each side and by joint agreement. There is no showing that the prosecution deliberately delayed commencement of the trial. We have held that a defendant who is responsible for a delay should not be allowed to claim violation of his rights to a speedy trial. *Fields v. State,* 648 P.2d 43 (Okl.Cr. 1982); *Jones v. State,* 595 P.2d 1344 (Okl. Cr.1979).

■ A defendant who is incarcerated need not demand a speedy trial. It is presumed that the law makes the demand for him. *McDuffie v. State,* 651 P.2d 1055 (Okl.Cr.1982). However, we do take note of appellant's repeated requests for trial.

The final factor to be considered under *Barker* is the prejudice to the appellant as a result of any delay. Appellant claims prejudice due to the death of two witnesses. If a defendant raises the presumption of prejudice, the burden is on the State to rebut this. The death of a witness is an obvious prejudice, the type sought to be avoided in *Barker.* If the State fails to disprove the prejudice, then the presump-

tion must stand. *State ex rel. Trusty v. Graham,* 525 P.2d 1231 (Okl.Cr.1974).

We agree with the State that the appellant's assertions of prejudice, unsupported by either the record or affidavits as to what the deceased witnesses might have testified to, fail to raise any presumption of prejudice. We are therefore unable to hold that the defense was at all impaired by the lapse of the time from the filing of the information to the trial.

In balancing the length of delay and appellant's repeated demands for speed against the fact that appellant was partly responsible for the delay and that he failed to show how he was prejudiced by the delay, we find that, under *Barker,* appellant was not denied his right to a speedy trial.

### III.

Appellant next claims that the Court's failure to give an eyewitness instruction sua sponte is reversible error. Appellant bases this contention on the victim's inconsistency in his testimony concerning specific details of his assailant's appearance.

Appellant failed to request a cautionary eyewitness instruction. "[F]ailure to request such an instruction operates as a waiver unless the Court is convinced that under the facts of the particular case the absence of the instruction resulted in the substantial violation of the defendant's rights." *Hair v. State,* 597 P.2d 347, 349 (Okl.Cr.1979).

In the case at bar, there is testimony that the witness, Hensley, viewed the burglar from a distance of approximately fifteen feet at 3:00 o'clock in the afternoon on a sunny day, for approximately ten to fifteen seconds. Mr. Hensley consistently identified the appellant as the man who burst from his trailer and pointed a gun at him. He was consistent in his identification of the defendant as the burglar. Mr. Hensley has not, however, always been consistent in his description of his assailant. At the preliminary hearing he testified the man who was at his house on the day of the crime did not have a beard, but at trial he

testified the man did have a beard. A police officer testified that the description he received of the suspect soon after the crime included facial hair, raising the inference that Mr. Hensley originally described his assailant as having a beard.

■ In view of the evidence presented, it is clear that the failure to issue sua sponte a cautionary eyewitness instruction based on the variation in the witness's testimony did not constitute a substantial violation of the defendant's rights.

## IV.

Appellant next alleges error due to the trial court's failure to suppress the victim's in-court identification based on a tainted pre-trial identification. We disagree.

Appellant contends that the photographic lineup was impermissibly suggestive as the appellant was the only individual pictured wearing overalls. This Court set guidelines for police lineups in *Thompson v. State*, 438 P.2d 287 (Okl.Cr.1968) wherein we held that "people participating in the lineup should be of the same general weight, height, age, color and race, whenever possible, and the subject should not be clothed in such a manner as to attract special attention or make him stand out from the other persons in the lineup." *Id.* at 289.

In this case the victim specifically mentioned overalls in his description of his assailant and the appellant was the only individual pictured in overalls; therefore we find that the pre-trial identification was suggestive.

■ However, even though a photographic identification procedure may be suggestive the in-court identification will not be excluded unless under the totality of the circumstances the photographic lineup was so impermissibly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This Court in *Johnston v. State*, 673 P.2d 844 (Okl.Cr. 1983) adopted the following factors from

*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) to aid in determining the admissibility of an in-court identification:

(1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any prelineup description and the defendant's actual description; (3) any identification of another person prior to the lineup; (4) the identification of the defendant on a prior occasion; (5) failure to identify the defendant on a prior occasion; and, (6) the lapse of time between the alleged act and the lineup identification.

In the present case, the crime occurred on a sunny afternoon and the witness never identified anyone but appellant as his assailant. His description of appellant, although general, was accurate. We take note of the victim's uncertainty as to whether his assailant had a beard, but find this uncertainty is outweighed by the other factors. He was positive in his identification, which occurred only a few days after the crime.

[11] As the *Wade* test is met here, we hold that the photographic lineup was not so impermissibly suggestive as to warrant exclusion of the in-court identification. We therefore find appellant's fourth assignment of error to be meritless.

## V.

Appellant, in his fifth assignment of error claims that the trial court erred in instructing in the second phase of the trial that "where identical names appear on the Judgment and Sentence from the previous charge, as that of the Defendant, this will be prima facie evidence that they are one and the same person, which, unless rebutted by evidence to the contrary, is sufficient for a finding to that effect." Appellant contends that this instruction unconstitutionally shifts the burden of proof to the defense.

■ Appellant did not object at trial to the giving of this instruction, nor did he submit a requested instruction on this

point. Where defendant has failed to object to the instructions given, or submit instructions, where the instructions generally cover the issues, this Court will not reverse, absent fundamental error. *Luckey v. State*, 529 P.2d 994 (Okl.Cr.1974).

The rule in Oklahoma pertaining to proof of identity for a former conviction is that stated in *Williams v. State*, 364 P.2d 702 (Okl.Cr.1961). There, we held that "the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and in the absence of rebutting testimony, supports a finding of such identity." *Id.* at 704. *See also Louder v. State*, 568 P.2d 344 (Okl.Cr. 1977).

■ The instruction given is taken almost directly from *Williams*, and as such is a correct statement of the law. We therefore find appellant's fifth assignment of error to be without merit.

## VI.

As his sixth assignment of error, appellant claims that the trial court erred in admitting evidence of other crimes.

The State filed its notice of intent to offer evidence of other crimes, in compliance with *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). At the time of this filing, the two separate charges had not been joined for trial, and the State intended to offer evidence of one crime to show motive and intent for the other. As the causes were joined, the other crimes evidence became unnecessary.

The purpose of the notice is to aid the defense in preparing its case. The State is not required to present other crimes evidence simply because it filed a notice of intent.

■ The State also presented evidence of nine of appellant's former convictions. Appellant testified in his own defense, and these convictions were properly offered to impeach his testimony under 12 O.S.1981, § 2609. The jury was properly instructed as to the purpose of this evidence.

■ The trial court instructed that evidence of other crimes should be received on the issue of the appellant's motive and intent. The instruction was improper as no such evidence was offered for this purpose. However, no objection was made to the giving of this instruction. Failure to object to the giving of an instruction waives all but fundamental error. *Luckey v. State*, 529 P.2d 994. As we find no fundamental error, appellant's contention here is without merit.

## VII.

■ Appellant, in his seventh and final assignment of error, claims the State failed to prove that appellant had sustained prior convictions. The rule in Oklahoma concerning proof of identity is that "identity of name is prima facie evidence of identity of person, and it is sufficient in absence of rebutting testimony." *Wilson v. State*, 568 P.2d 1323 (Okl.Cr.1977). Under Oklahoma law, the State's evidence was sufficient to establish appellant's identity as to his prior convictions.

Appellant urges us to adopt the position taken by the Tenth Circuit Court of Appeals in *Gravatt v. United States*, 260 F.2d 498 (10th Cir.1958), which holds that identity of names does not establish defendant's prior convictions.

While adoption of this position may, at some future point, be necessary, we decline to do so in this case due to the uniqueness of appellant's name, and the defense's failure to offer any rebuttal evidence.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

PARKS, P.J., specially concurs.

BUSSEY, J., concurs in results.

PARKS, Presiding Judge, specially concurring:

## I.

The appellant contends that the trial court gave an instruction which unconstitutionally shifted the burden of proof, on the

issue of former convictions, to the defense. I agree. As a standard of review for this Court, an identity of names on conviction documents, in the absence of rebutting testimony does support a finding of prior convictions. However, despite the fact that the test is the correct standard for review, it is not a proper jury instruction.

Under the instruction given, the jury may have assumed that they were required to find the appellant guilty on the AFCF count, *unless* he submitted rebutting testimony. Such an instruction shifts the burden of proof to the appellant to demonstrate why an element of the crime should not be presumed. The constitutional question is not whether such a presumption is reasonable, but whether it improperly relieves the prosecution of the burden to prove every element of the crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Therefore, since the instruction could have been interpreted by the jury as creating a mandatory rebuttable presumption, it was unconstitutional. *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 1972–73, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). As the Supreme Court stated in *Franklin*:

> An irrebuttable or conclusive presumption relieves the State of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts. A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but it is no less unconstitutional.

The determination of an element of the crime must be left to the jury. The instruction in this case went well beyond the language of a permissive inference. *Cf. Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983). Here, the jury was not told that they could reject the presumption. Title 12 O.S.1981, § 2304(C).

However, in the unusual circumstances of this case, I do not believe the appellant was prejudiced by the error. The accuracy of the documents detailing the appellant's former convictions was never made an issue at trial. In addition, even though appellant's testimony was not incorporated into the sentencing stage, he freely admitted the prior crimes during both direct and cross examination. The appellant never questioned the sufficiency of the conviction documents, nor objected to their admission. He did not object to the trial court's instructions or submit any instructions of his own. Finally, the appellant's attorney repeatedly referred to appellant's guilt stage admissions during his sentencing stage argument to the jury. Therefore, in these limited circumstances, I believe that the appellant has failed to demonstrate that he was prejudiced by the trial court's erroneous instruction.

## II.

Appellant also contends that the introduction of copies of prior judgments and sentences bearing his name were insufficient proof of the prior convictions. He cites *Gravatt v. United States*, 260 F.2d 498 (10th Cir.1958), which holds that identity of names alone does not establish prior convictions. The majority opinion indicates that the rule in Oklahoma is inconsistent with *Gravatt, supra* at 10. I disagree.

*Gravatt* states that merely introducing the indictment or information and the judgment and sentence are insufficient to take the case to the jury, especially if the names are not identical. *Id.* at 499. Except for the slightly misleading statement, in *Wilson v. State*, 568 P.2d 1323 (Okl.Cr.1977), cited by the majority, this Court has never held that identity of name *alone* is suffi-

cient evidence of former conviction. Both *Williams v. State*, 364 P.2d 702, 703 (Okl. Cr.1961), and *Holt v. State*, 551 P.2d 285, 288 (Okl.Cr.1976), which are cited as authority by *Wilson*, state:

In regard to proof of former conviction under the Habitual Criminal Act, 21 O.S. (1951) § 51, the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity. This will leave the question of identity to be determined by the jury, after a proper instruction has been given, upon a consideration of all surrounding facts and circumstances, such as commonness or unusualness of the name, the character of the former crime or crimes, and the place of its commission.

Thus, both *Williams* and *Holt* clearly indicate that there must be other "facts and circumstances for the jury to consider in reaching their verdict. In this context, it should be noted that the correct rule is that name identity "*supports* a finding of such identity," *id.* (emphasis added), not, as stated in *Wilson*, that name identity is "*sufficient* in the absence of rebutting testimony," 568 P.2d at 1327 (emphasis added). The "facts and circumstances" may simply be that the defendant has an unusual name. Identity of common names, without more, however, is not "sufficient." *Smith v. State*, 695 P.2d 1360 (Okl.Cr. 1985); *Brown v. State*, 578 P.2d 364 (Okl. Cr.1978).

In this case, there were other "facts and circumstances" for the jury to consider. Therefore, the appellant's allegation of error is without merit.

### III.

Finally, I believe the majority misinterprets the appellant's identification complaint. The majority says the appellant is complaining about the failure of the trial court to suppress the victim's in-court identification. *Supra* at 675. I am of the opinion that the appellant is objecting to the admission of testimony relating to the tainted photographic identification.

The majority agrees that the pre-trial photographic identification procedure was impermissibly suggestive. *Supra* at 675. Despite this fact, the victim was allowed to testify as to his photographic identification of the appellant. It was error to allow that testimony. *Cf. United States v. Wade*, 388 U.S. 218, 87 S.Ct.1926, 18 L.Ed.2d 1149 (1967).

However, since the in-court identification was based upon a relatively strong independent identification and since the photographic identification was mentioned only briefly and was not used to bolster a weak in-court identification, I would hold that the tainted evidence was merely cumulative and did not result in a miscarriage of justice. *See* 20 O.S.1981, § 3001.1. The appellant has, therefore, failed to show that he was prejudiced by the error.