**Mark Francis MILES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–84–168.**

Court of Criminal Appeals of Oklahoma.

Aug. 11, 1987.

James T. Rowan, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Mark Francis Miles, appellant, was tried by jury for the crime of First Degree Rape, After Former Conviction of Two or More Felonies in violation of 21 O.S.1981, §§ 51(B), 1111 and 1114 in Case No. CRF–83–3019 in the District Court of Oklahoma County. The appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at thirty-five (35) years' imprisonment. The trial court sentenced the appellant in accordance with the jury's verdict. From this judgment and sentence, the appellant appeals to this Court.

On June 7, 1983, F.A., thirteen years old, arrived home early from school. She and a friend decided to walk to a game room called "Player Stadium". The girls had been playing video games for a while when the appellant approached them. F.A. knew the appellant, as he worked with her mother at a nursing home. They engaged in some conversation and appellant asked F.A. if she wanted a ride home. At first, F.A. declined, but subsequently she accepted appellant's invitation.

Appellant and F.A. left the game room in a blue Ford. However, appellant did not take F.A. home. He informed her that he was going to his cousin's house first. Instead, appellant took F.A. to an apartment house near downtown Oklahoma City. After being inside for a short while, appellant grabbed F.A. by her arms and ordered her to do everything he wanted her to do. Appellant told F.A. to take off her clothes. When F.A. began to cry, appellant yelled at her and began to choke her.

After F.A. took off her clothing, appellant ordered her to get on the bed. Appellant then removed his clothing and had forcible sexual relations with F.A. three times. Appellant then allowed F.A. to get dressed. He took her to a bus stop and dropped her off. F.A. took a bus to a friend's house. F.A. told her friend what had happened, and the friend phoned the police.

Officer Jack Lane of the Oklahoma City Police Department received a call to investigate the rape at approximately 7:30 p.m. on June 7th. F.A. and her aunt informed Officer Lane of the rape and showed him the apartment where the attack occurred.

Detective K.E. Smith of the Oklahoma City Police Department received Officer Lane's report on June 9th and arranged to speak to F.A. on June 11th. During the interview, Detective Smith obtained the appellant's name. Detective Smith assembled a photo lineup containing the appellant's picture. F.A. picked the appellant out of the lineup, as her attacker.

On June 16th, Detective Smith interviewed the appellant. After being advised of his rights, appellant agreed to talk voluntarily. Appellant claimed he was home all day on June 7th. At trial, the defense called several members of the Wilder family to testify that appellant was asleep at their home at the time of the attack. Appellant's mother also testified that another man who looked just like her son worked at the nursing home with F.A.'s mother.

During trial, the prosecution called Dr. Thomas Lera, a pediatrics resident at Children's Hospital. Dr. Lera had examined F.A. after the rape. He testified that during a pelvic examination, he found vaginal secretions and lacerations which were consistent with forcible rape.

The prosecution also called Ms. Melissa Hughes, a forensic chemist with the Oklahoma City Police Department. Ms. Hughes conducted several chemical tests on body fluids found on F.A. and hair sample comparisons of F.A. and the appellant. Ms. Hughes determined that F.A. had type A blood and was a "non-secretor", meaning her blood type does not manifest itself in other bodily fluids. Ms. Hughes also determined that the appellant was blood type O but was a secretor. This meant that other bodily fluids could be analyzed for blood type. Ms. Hughes found semen present in samples taken from F.A.'s vagina, panties and slacks. She concluded that the semen was from a person with type O blood and who also was a secretor.

A sheet was also taken from the appellant's apartment. The sheet contained hairs consistent with appellant's hair, and one hair was consistent with F.A.'s hair. Scalp hairs were also found that were not consistent with either the appellant or F.A.

■ Appellant's first assignment of error alleges the trial court erred when it permitted third party testimony concerning an extra-judicial identification. Specifically, appellant argues that Detective Smith was allowed to testify that he showed a photographic line-up to F.A., and that she identified the appellant as her attacker.

Although we are convinced that admission of Detective Smith's testimony was error and that the jury should have been admonished to disregard it, an inordinate amount of prejudice did not result. Furthermore, appellant's failure to object to the admission of the testimony constitutes a waiver of the objection on appeal. *Christian v. State*, 708 P.2d 1133 (Okl.Cr.1985). The identification followed the positive in-court identification of the appellant by F.A. Moreover, even if the evidence had been properly excluded there was sufficient evidence to justify the appellant's conviction. Therefore, we find the testimony of Detective Smith cumulative and the error to be harmless.

■ Under appellant's second assignment of error, he alleges that the trial court erred at the beginning of the second stage of the trial by instructing the jury that the appellant had two felony convictions. Appellant asserts that the effect of the instruction was to shift the burden of proof to the defense.

Title 22 O.S.1981, § 860 provides in pertinent part:

In all cases in which the defendant is prosecuted for a second offense, except in those cases in which former conviction is an element of the offense, the procedure shall be as follows:

\* \* \* \* \* \*

(b) If the verdict be guilty of the offense charged, that portion of the indictment or information relating to prior offenses shall be read to the jury and evidence of prior offenses shall be received. The court shall then instruct the jury on the law relating to second and subsequent offenses, and the jury shall then retire to determine (1) the fact of former conviction, and (2) the punishment, as in other cases.

A review of the record indicates that the trial court followed the correct procedure. What appellant claims to be a burden shifting instruction was simply a preliminary remark by the trial court that the information charged that the appellant had been twice-convicted. The record simply does not support appellant's assertion that the trial court gave an instruction which shift-

ed the burden of proof. The trial court's instructions to the second charge clearly state that the burden of proof as to the former convictions is on the State. This assignment is without merit.

■ Appellant's final assignment of error is similar to the proposition above in that he alleges that the trial court erred during the second stage when an instruction impermissibly shifted the burden of proof of the previous convictions to the defense. The instruction read as follows:

> You are instructed that the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and in the absence of rebutting testimony, supports a finding of such identity.

This Court finds that the trial court correctly stated the applicable law. See, *Mitchell v. State*, 659 P.2d 366 (Okl.Cr. 1983). This assignment is without merit.

For the foregoing reasons the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurring.

PARKS, Judge, specially concurring:

I specially concur in this case regarding the instruction to the jury, based on my special concurrence in *Henager v. State*, 716 P.2d 669, 675 (Okl.Cr.1986).